513 So.2d 1242 (1987)
MISSISSIPPI FORESTRY COMMISSION
v.
Robert A. PIAZZA.
No. 57155.
Supreme Court of Mississippi.
October 7, 1987.
*1243 Edwin Lloyd Pittman, Atty. Gen. by Robert E. Sanders, Sp. Asst. Atty. Gen., Jackson, for appellant.
J. Niles McNeel, Louisville, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
The Mississippi Forestry Commission has appealed from a permanent injunction of the chancery court of Grenada County enjoining the Commission from transferring its employee Robert A. Piazza. Finding the injunction to be manifestly in error, we reverse and render a judgment here for the Commission.

FACTS
Robert A. Piazza was employed in 1979 by the Mississippi Forestry Commission. In 1985 he was an Information and Education and Safety Training Forester in the Northwest District, and living in Grenada.
On May 28 that year Robert S. Moss, the State Forester, mailed Piazza a memorandum notice that effective June 15 he was receiving a "173.2" transfer to the Southeast District with headquarters in Wiggins. The memorandum notified Piazza he was to receive a monthly salary increase from $1,636.67 to $1,694.06. Moss sent another notice to Piazza on June 17 making the transfer effective July 15. The memoranda commended Piazza's performance.
By memo dated May 31, Piazza responded to the first notice objecting to the transfer. His objection stated:
1. I am satisfied in my present position.
2. There are great forestry needs and opportunities in the Northwest District. I feel my job here is important and vital to the interest of the landowners or [sic] this area and the Mississippi Forestry Commission.
3. It would be a financial hardship on me to move. I own my own home.
4. I have a Military obligation in the Army Reserve. I am the Commanding Officer of the 173rd Quarter Master Company in Greenwood. I am a 2nd Lt. soon to be promoted to 1st Lt. in a Captain's slot.
5. I have been in Grenada for four years and I have many community obligations.
6. I have questions as to the motive behind my transfer.
On June 6 Moss sent a memo to Piazza informing him first that all of his objections had been considered prior to the decision to transfer him, that all Commission employees were subject to transfer where a need existed, and his services were needed in the Southeast District.
The Commission delayed the effective date of Piazza's transfer pursuant to a request by his attorney, in order to accommodate Piazza's military obligations.
*1244 On July 11 Piazza filed a complaint in the chancery court of Grenada County seeking injunctive relief prohibiting his transfer. He alleged that he had no administrative relief because his proposed transfer was not recognized as a "grievable" matter in administrative policies. He further alleged the transfer would cause irreparable harm, and that his transfer was against established policies and procedures of the Commission. In addition, he claimed the State Forester, Moss, had wrongfully accused him of interfering with the Commission's dealing with Piazza's supervisor. At the hearing it developed that the supervisor alluded to was Hollis Ishee.
A temporary restraining order was issued by the chancellor on July 12. On motion of the Commission, the chancellor dissolved the temporary restraining order on July 29 because Piazza had not exhausted his administrative remedies.
On July 31 Piazza by and through his attorney filed a notice of appeal on the form provided by the Mississippi Employee Appeals Board, the body of which reads as follows:
1. State in the space below what action of the appointing authority forms the basis for this appeal: Lateral transfer from Northwest District Office at Elliott, Mississippi, to Southeast District Office in Wiggins, Mississippi, against Appellant's wishes.
2. Effective date of the appointing authority's final decision: 7/15/87
3. If discrimination is alleged as the basis for this appeal, set out in the space below the specific facts which support the conclusion of discrimination: (left blank)
4. State the relief you are requesting: Stay in Present Location & Job Assignment  Appellant has been in Grenada Chancery Court and it has denied a hearing in Cause # 85-7-123.
5. Attach a copy of the final decision of the appointing authority. Letter of transfer & copy of page 75, 5.30.4(b) and Page 76, 5.40.2(c) Miss. State Personnell [sic] Board.
William H. Smith, III, chief hearing officer for the State Personnel Board, responded to this notice by letter dated August 21, 1985, as follows:
After reviewing the petition which you have filed in this cause, it appears that the Employee Appeals Board does not have jurisdiction to hear the appeal. However, if you wish me to have a hearing and afford you the opportunity to offer proof, please advise within 5 days otherwise I will enter an Order of Dismissal for the reason set forth above.
Thereafter, on August 29, in the same chancery court cause, Piazza filed another complaint for injunctive relief. He again alleged that his transfer was a non-grievable matter, and that he had exhausted his administrative remedies. Additionally, he alleged the transfer was contrary to the established policies and procedures of the Commission, and that the transfer would cause him irreparable harm.
A hearing on this second complaint was held and conducted by the chancellor on August 30 and September 20, at which time the temporary restraining order was made permanent.
In addition to being employed by the Forestry Commission, Piazza also served in the United States Army Reserve as commanding officer of the 173rd Quartermaster Company in Greenwood. He held the rank of second lieutenant, and was about to be promoted to first lieutenant. Also, because there were only five units such as the Greenwood quartermaster unit in the United States, he alleged that he was likely to receive a promotion to Captain. The unit met one week end a month, and each summer there was a two-week tour of duty. Both Piazza and the first sergeant of the unit testified, however, that as commanding officer it was necessary to sign documents on short notice, and reports which had to frequently be made in a day's notice. Thus, it would be very difficult for Piazza living in Wiggins to properly fulfill all his duties as a commanding officer of the unit. The difficulty of continuing as commanding officer of the Greenwood unit posed by a transfer to Wiggins was the *1245 main reason Piazza objected to the transfer.
Although single, Piazza owned a home in Grenada and another objection he had to the transfer was the necessity to purchase a new home in Wiggins, and the difficulty of getting as good long-term financing as he then had in Grenada. No proof or corroboration was offered by Piazza, however, as to the availability of housing, or financing in Wiggins as opposed to Grenada.
At the trial it developed that the Forestry Commission and Hollis Ishee had been involved in a controversy and Ishee had filed an action against the Commission in the Northern Mississippi United States district court. Although Piazza had not testified for Ishee in the Federal court action, he had contacted State legislators on Ishee's behalf, and it was his opinion that the transfer was an act of vengeance by Moss because Piazza had taken an active role on Ishee's behalf.
Moss denied this, although he did admit he had been upset over the affairs in the Northwest District Office and had expressed the opinion that the mess needed to be cleaned up. He testified the transfer proposed for Piazza was because a vacancy had occurred in the Southeast District through the resignation of a forester, that he considered other foresters from around the state to fill the position, but finally had chosen Piazza. Finally, one of the factors affecting Moss was that the other possible transferees were married and had children in school. His main stated reason was that Piazza was well qualified, and was the forester who was needed to fill the vacancy in Wiggins.
Piazza contended a capable man could be employed for the vacancy without necessitating any transfer, and that he was being singled out because of internal Commission politics.
It also developed at the hearing that the Commission members supported Moss' decision. Copies of letters several commissioners had written to legislators in response to their letters on Piazza's behalf were introduced into evidence.
Several witnesses offered on Piazza's behalf testified that the Commission had a long-standing policy of not transferring personnel without their consent. These witnesses were present, as well as retired employees of the Forestry Commission. The Commission offered evidence to the contrary, that indeed personnel had been transferred involuntarily. There was sufficient evidence for the chancellor to conclude, as he in fact did, that the usual practice and procedure of the Commission was not to require a Commission employee to transfer if he in fact did not want to move. The chancellor further found, however, that there were no written policies or guidelines to this effect.
In his final judgment the chancellor concluded that a State agency must have some degree of latitude in making personnel assignments, but that the discretion was not unfettered. He further found, as noted, that while there was no written policy or guideline, there was considerable testimony that the normal practice employed in prior transfers had been violated in this case.
The chancellor further found that Piazza had been discriminated in his transfer because he was single as opposed to being married, and that all normal procedures involved in considering personnel assignment had been abandoned, ignored or violated in his case.
He further found that Piazza would be irreparably damaged because he would have to surrender his low interest home loan, sell his home, and surrender his position as commander of the Army Reserve unit in Greenwood, and would have to bear all of his moving expenses to Wiggins.
Finally, the chancellor permanently enjoined the Commission from transferring Piazza.
The Commission has appealed.

LAW
The notice to Piazza that he was being transferred stated that it was "173.2" transfer, referring to § 173.2 of the Commission's policies and procedures regulations, which reads as follows:

*1246 The Commission may transfer employees to other working areas if:
(1) It is in its opinion to the best interest of the Commission.
(2) It is requested by the employee.
The Mississippi Forestry Commission is a State agency under the supervision of the State Personnel Board. The purpose of a state-wide system of personnel administration is set forth in Miss. Code Ann. § 25-9-101, as follows:
§ 25-9-101. Purpose of chapter.
It is the purpose of this chapter to establish in the State of Mississippi a system of personnel administration based on sound methods of personnel administration governing the establishment of employment positions, classification of positions and the employment conduct, movement and separation of state employees; to build a career service in government which will attract, select and retain the best persons, with incentives in the form of equal opportunities for initial appointment and promotions in the state service; and to establish a system of personnel management that will ensure the effective and efficient use of employees in the state service. [Emphasis added]
Pertinent principles are set forth in Miss. Code Ann. § 25-9-103, as follows:
§ 25-9-103. Principles applicable to administration of state personnel system.
* * * * * *
(d) To retain employees on the basis of the adequacy of their performance, to correct inadequate performance, and to separate employees whose inadequate performance cannot be corrected.
(e) To assure fair treatment of applicants and employees in all aspects of personnel administration without regard to political affiliation, race, national origin, sex, religious creed, age or physical disability. [Emphasis added]
Pertinent duties of the State Personnel Board are set forth in Miss. Code Ann. § 25-9-115, as follows:
§ 25-9-115. Specific duties and functions of board.
It shall be the specific duty and function of the state personnel board to:
(a) Represent the public interest in the improvement of personnel administration in the state departments, agencies and institutions covered by the state personnel system;
* * * * * *
(e) Appoint an employee appeals board, consisting of three (3) hearing officers, for the purpose of holding hearings, compiling evidence and rendering decisions on employee dismissals and other personnel matters as provided for in sections 25-9-127 to 25-9-131 of this chapter.
Miss. Code Ann. § 25-9-119 gives the duties of the director, pertinently as follows:
§ 25-9-119. State personnel director; selection; qualifications; duties.
* * * * * *
(2) The duties and responsibilities of the director shall be:
* * * * * *
(c) To submit for board approval proposed rules and regulations which shall require a uniform system of personnel administration within all agencies included in this chapter. Such rules and regulations, when approved by the board, shall be binding upon the state departments, agencies and institutions covered by this chapter and shall include provisions for the establishment and maintenance of classification and compensation plans, the conduct of ... appointments, promotions, transfers, demotions, separations, ...
The pertinent portions of Miss. Code Ann. § 25-9-131 setting forth the proceedings before the Employee Appeals Board, and appeal therefrom, are as follows:
§ 25-9-131. Proceedings before employee appeals board; judicial review.
(1) Any employee in the state service may appeal his dismissal or other action adversely affecting his employment status to the employee appeals board created herein. The proceedings before the *1247 employee appeals board shall be de novo, ... [Emphasis added]
(2) Any employee aggrieved by a final decision of the employee appeals board shall be entitled to judicial review thereof in the manner provided by law.
The pertinent portion of Miss. Code Ann. § 25-9-132 dealing with judicial review is as follows:
§ 25-9-132. Judicial review of employee appeals board decisions.
Any employee aggrieved by a final decision of the employee appeals board shall be entitled to judicial review thereof in the manner provided in this section.
* * * * * *
(2) The scope of review of the circuit court in such cases shall be limited to a review of the record made before the employee appeals board or hearing officer to determine if the action of the employee appeals board is unlawful for the reason that its was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Miss. Code Ann. § 25-9-149 prohibits discrimination against any employee "on the basis, color, religion, sex, national origin, age or handicap."
In addition to, and in furtherance of the statutory provisions, the State Personnel Board has adopted an employee handbook. As to a transfer, the handbook states:
TRANSFER
A state service employee may transfer from an employment position in one agency to a vacant employment position with the same salary range in another agency within the state service. The transfer of a state service employee is accomplished through the use of a Certificate of Eligibles (See Selection Process Flow Chart). The three types of transfers are: Promotional Transfer, Lateral Transfer and Voluntary Demotional Transfer.
The pertinent portions of the handbook dealing with political activity or seeking political influence are as follows:
POLITICAL ACTIVITY
Employees should expect to work in an atmosphere that is free from political influence or coercion.
* * * * * *
Political use of Authority or Influence No employee may request or accept from any elected official any advantage relating to employment status or compensation in the state service.
* * * * * *
Many departments and agencies maintain more specific rules for employees. Check with the agency personnel officer for additional information.
One of the more serious offenses under the manual is failure to follow a supervisor's instruction or to comply with applicable written policy.
Under Grievances the manual sets out "grievable" and "non-grievable" issues. Pertinent portions are as follows:
GRIEVANCES
* * * * * *
What Issues Are Grievable?
The following issues are grievable under the state service Grievance Procedure:
(1) disciplinary actions, including dismissals, demotions, and suspensions;
(2) application of personnel policies, procedures, rules, regulations, ordinances, and statutes;
* * * * * *
(4) complaints of discrimination on the basis of race, color, creed, political affiliation, religion, age, handicapped condition, national origin, or sex;
(5) any matter of concern or dissatisfaction to an employee if the matter is subject to the control of agency management except where the issue is expressly stated as non-grievable;
* * * * * *
What Issues Are Non-Grievable?
* * * * * *

*1248 (2) relocation of employees;
* * * * * *
(6) the selection of an individual by the appointing authority, department head, or designee to fill a position through promotion, transfer, demotion, or appointment unless it is alleged that selection is in violation of a written agency policy or of a State Personnel Board rule on filling vacancies; [Emphasis added]
Finally, under Appeals the manual provides in pertinent part:
APPEALS
After the final step of the grievance procedures, an employee who is dissatisfied with the decision or action may appeal. The Employee Appeals Board shall assign a hearing officer, a time and place for hearing the appeal. When a case is appealed to the Employee Appeals Board, the entire case is de novo, heard again.
* * * * * *
Who May Appeal?
* * * * * *
(3) No person may appeal a non-grievable issue.
* * * * * *
Proof
Any employee who has received written notice of dismissal or action adversely affecting compensation or employment status shall be required to furnish evidence that the reasons stated in the notice of dismissal or action adversely affecting compensation or employment status are not true or are not sufficient grounds for the action taken.
The appointing authority shall be required to show at the hearing in the agency and at the de novo hearing that the dismissal or other act adversely affecting compensation or employment status based on the employee's inefficiency or other good cause.
Piazza made no contention in the chancery court proceeding that the state forester and the Commission violated some constitutional right he had not to be transferred. He made no claim that any due process right was violated in the decision making process leading to and effectuating his transfer. See generally: DeSoto County School Board v. Garrett, 508 So.2d 1091 (Miss. 1987); Tutwiler v. Jones, 394 So.2d 1346 (Miss. 1981). Indeed, he made no claim that he had a statutory right not to be transferred. Finally, in his complaint he alleged that under the regulations of the State Personnel Board (the Board), his transfer was "non-grievable."
Piazza claimed he had a right not to be transferred because:
1. There was an agency custom and policy not to transfer employees involuntarily.
2. The policy and procedure manual did not authorize an involuntary transfer.
He further claimed he had a right to go into chancery court and seek injunctive relief because:
1. He had exhausted his administrative remedies.
2. The transfer would cause him irreparable harm.
The only rights which Piazza could have under his employment with the State, if any, are contained within the act creating the State Personnel Board, the pertinent provisions of which are above set forth, and which inexplicably are omitted from the briefs of both the appellant and appellee.
The statutory purpose of the State Personnel Board is to establish a sound system of personnel administration, to build a career service in state government in order to attract and retain the best qualified persons, to give incentives through equal opportunities in the appointment and promotion of employees, all of which is to insure the effective and efficient use of employees in state service. Included in personnel administration are the "employment conduct, movement, and separation of state employees." Miss. Code Ann. § 25-9-101.
There is nothing in this statutory purpose which should exclude transfers of employees from being a possible proper consideration *1249 by the Board as well as other personnel matters. In fact, the "movement" of state employees is specifically mentioned. Furthermore, one of the duties of the state director is to submit for Board approval rules and regulations governing, among other things, the transfer of state employees. Miss. Code Ann. § 25-9-119(2)(e). Under Miss. Code Ann. § 25-9-131 an employee has the right to appeal to the State Personnel Board for any action "adversely affecting his employment status." It thus appears that there may very well be transfers of state employees which would entitle an aggrieved employee under the act to seek relief.
By regulation through its employees handbook, it appears the State Personnel Board has attempted to make a transfer a "non-grievable" matter, however, unless it is alleged to be in violation of a "written agency policy" or of a State Personnel Board rule on filling vacancies.
In this case it also appears that the hearing officer was premature in rejecting Piazza's appeal for lack of jurisdiction. There was no way for the hearing officer to determine whether Piazza had some possible grievance under the State Personnel Board Act or a regulation promulgated thereunder without some kind of a hearing and giving Piazza the opportunity to present evidence.
Under Miss. Code Ann. § 25-9-131(1) and by regulation, Piazza was entitled to a de novo hearing before a hearing officer assigned by the Board.
Piazza had a right to appeal this hearing officer's ruling to the circuit court, Miss. Code Ann. § 25-9-132, alleging that he had been denied an opportunity to make his case before the hearing officer, and the circuit court may very well have determined the hearing officer should have heard the case and remanded it to the Board of a hearing. Miss. Code Ann. § 25-9-132(3).
Even if Piazza had gone to chancery court with the same complaint, and requested the chancery court to grant a temporary restraining order until he could present his case to the State Personnel Board, we would have an entirely different question. See generally: Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); Parks v. Dunlop, 517 F.2d 785 (5th Cir.1975); Perry v. Golub, 400 F. Supp. 409 (N.D.Ala. 1975).
Piazza did neither. While he did re-file his complaint in the chancery court, in doing so he specifically agreed with the hearing officer that his was a "non-grievable" matter. And, in the chancery court he sought direct relief on the issue of whether the Forestry Commission had the authority to transfer him involuntarily.
The chancellor was manifestly in error in granting the permanent injunction. If, as Piazza alleged in chancery court, and he now argues before this Court, the Commission regulation did not authorize an involuntary transfer, his relief was through the State Personnel Board, not through direct application to a chancery court. Moreover, we do not agree with Piazza that the Commission regulation did not authorize an involuntary transfer. Section 173.2 of the Commission's policies and procedures regulations reads that the Commission may transfer employees if:
(1) It is in its opinion to the best interest of the Commission.
(2) It is requested by the employee.
Piazza argues that both these pre-requisites must be met to authorize a transfer. We disagree. It would be a monstrous disservice to the taxpayers of this state for any court to hold that when a state agency has determined it is to the best interest of that agency to transfer an employee, it still must get the employee's consent. There is nothing about this regulation which requires such an interpretation.
In conjunction with his argument of a written prohibition, and to reinforce the interpretation he urges us to make, Piazza argues that there was an established custom and policy of the commission not to transfer employees involuntarily. There was considerable testimony offered before the chancellor by employees of the State Forestry Commission that employees were not transferred against their wishes. Although *1250 this evidence was disputed, the chancellor found that Piazza's transfer was contrary to an unwritten general custom and policy against involuntary transfers.
The chancellor also found Piazza was being discriminated against because he was single.
Here we need to make a careful distinction between a common-sense practice of an agency and the authority of the agency to vary therefrom in order to meet its needs.
A statewide agency with employees scattered in every part of the state, and obligations imposed by law manifestly must be vested with the authority to designate where its employees work. It may very well be true that, as a practical matter, a state agency  aside from its authority  will endeavor to avoid transfers wherever possible against the wishes of an employee. No doubt the management of any agency will attempt to avoid disrupting home environments.
This does not affect the authority of the agency to transfer an employee against his will. That, for common-sense morale purposes, a particular custom is followed affects not the least the authority of an agency to deviate from it.
While a departure from custom may indicate personal animus of a superior against a subordinate, this in and of itself creates no right where none existed. Commensurate with their statutory authority and obligations it is the function of agency heads to determine its affairs and operations, including personnel matters.
Moreover, from this record this Court does not propose to condemn the state forester or the Commission for being upset that employees were badgering legislators every time they had some purely personal grievance. The record does not reveal what was causing the problem in the Northwest District. Apparently, there was dissension over action being taken by the Commission against the district forester Hollis Ishee. We cannot say from this record that state forester Moss did not have just reason to be upset with the condition of affairs there. A nest of malcontents may very well need scattering.
A state employee who observes nonfeasance or misfeasance in the conduct of affairs of his agency, which is not being corrected, should be highly commended for reporting such matters to the Legislature. In so doing he is rendering a public service.
On the other hand, a state employee who runs to his legislator friends to engage in purely personal matters not affecting the efficiency of the agency is something else entirely. That is pure politics.
This court finds that this is the very sort of thing the State Personnel Board Act was to prevent. One purpose of the act was to get state employees out of internecine politics. As noted, a Board regulation promulgated thereunder provides:
No employee may request or accept from any elected official any advantage relating to employment status or compensation in the state service.
There is a sound societal policy behind courts' reluctance, in the absence of statutory mandate, to engage in administrative affairs even where state employees may have a just grievance. However well intentioned, such forays would expend inordinate time in analyzing the functions and discretionary authority of state agencies. Courts are ill equipped to give just results on such broad and many faceted matters, without countervailing disadvantage on their own limited resources and time. Furthermore, the people of this state are entitled to have the governmental agencies prudently expend tax dollars on the needs of the state. For courts to engage in overseeing state agencies would of a certainty divert funds sorely needed for the general welfare of this state. Grievances by state employees may best be rectified by the executive and legislative branches of the government. Generally see: Bullard v. Webster, 623 F.2d 1042 (5th Cir.1980); Kletschka v. Driver, 411 F.2d 436 (2nd Cir.1969); Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 88 Harv.L.Rev. 367.
REVERSED AND RENDERED.
*1251 ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.