# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-01219-SCT

*MISSISSIPPI DEPARTMENT OF PUBLIC
SAFETY/MISSISSIPPI HIGHWAY SAFETY PATROL,
CAPTAIN JOHHNY E. KERR, AND MASTER
SARGEANT JOE EDDIE MCFERRIN, JOINTLY AND
SEVERALLY*

*v.*

*ROBERT L. AUBUCHON*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/94 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | T. HUNT COLE |
| ATTORNEY FOR APPELLEE: | MICHAEL G. THORNE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKER'S COMP) |
| DISPOSITION: | REVERSED AND RENDERED - 3/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.

### SMITH, JUSTICE, FOR THE COURT:

Sergeant Robert L. Aubuchon was a state trooper with the Mississippi Highway Safety Patrol for twenty-four years. During 1992, Aubuchon was brought before a MHSP tribunal for disciplinary proceedings after which a three-day suspension was imposed. Aubuchon appealed his suspension to the Employee Appeals Board and later filed a civil suit for wrongful termination, breach of contract, and defamation against the Department of Public of Safety (hereinafter "DPS") and the Mississippi Highway Safety Patrol (hereinafter "MHSP"). DPS/MHSP moved for summary judgment alleging *inter alia* that Aubuchon's suit is barred by the doctrine of sovereign immunity; the statute of limitations; and the failure to exhaust his administrative remedies. The lower court denied the motion for summary judgment. Aggrieved, DPS/MHSP now appeal to this Court.

Because we find that the claims asserted by Aubuchon are barred on several bases we hold that the trial court erred in denying the motion for summary judgment by DPS/MHSP.

## FACTS

Sergeant Robert L. Aubuchon is a twenty-four year veteran of the Mississippi Highway Safety Patrol having joined the patrol on March 15, 1969. On March 18, 1992 disciplinary proceedings were instituted against Aubuchon resulting in a three-day suspension. Aubuchon appealed the suspension to the Mississippi Employee Appeals Board after which he entered into an Agreed Order on October 5, 1992 and agreed to tender his resignation in exchange for the reinstatement of the three (3) day suspension. Aubuchon was later paid for the three-day period during which he was on suspension.[1] The Order also provided that annual leave and comp time would be handled according to state law.

Aubuchon alleges that the true basis for the disciplinary proceedings arose after he protested when Captain Johnny E. Kerr and Master Sergeant Joe Eddie McFerrin requested that he dismiss two speeding tickets issued to Vera Q. Feather during 1991/1992 or face a transfer to Benton County. Lee County Justice Court records reflect notations by Aubuchon that the citations were dismissed on January 28, 1992 as "directed by Captain Johnny Kerr and Master Sergeant Jo McFerrin to dismiss or be transferred." Aubuchon alleges after the ticket incident he was placed under surveillance following a complaint by an unidentified individual. Aubuchon was allegedly observed at home during working hours. Following the disciplinary proceedings but prior to the EAB appeal/Agreed Order, Aubuchon gave written notice of his retirement. Aubuchon requested that his retirement become effective on May 1, 1993 with his last working day to be July 31, 1992. Aubuchon wished to exhaust his accumulated personal leave prior to his effective date of retirement. Colonel Jay F. Clark received Aubuchon's letter and responded with appreciation and thanks to Aubuchon for his many years of service.

However, on September 16, 1992, Aubuchon received notice from Jim Ingram, Commissioner of Public Safety, that the prior practice followed by MHSP of allowing retiring employees "to take amounts of personal leave in excess of thirty (30) days is contrary to the law. . . ." Aubuchon was advised that he could retire effective October 31, 1992; be terminated; or return to duty with the patrol. Ingram's advice stemmed from meetings with the State Auditor's Office and an Attorney General's Opinion.

On December 7, 1993, Aubuchon filed a complaint in the Circuit Court of Lee County against DPS/MHSP alleging violations of an "employment contract" resulting in miscalculation and loss of retirement benefits. DPS/MHSP moved for summary judgment on January 25, 1994. Prior to a ruling on that motion, Aubuchon filed an amended complaint on July 6, 1994 against DPS/MHSP, Captain Johnny E. Kerr, and Master Sergeant Joe Eddie McFerrin alleging wrongful termination; breach of express and implied contract of employment; and slander. On August 1, 1994, the defendants moved for summary judgment on the amended complaint and for Rule 11 Sanctions. On November 21, 1994, Honorable Barry W. Ford denied the Defendant's motion. Aggrieved, DPS/MHSP now appeal to this Court.

## DISCUSSION OF LAW

## I. WHETHER THE MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY IS PROTECTED FROM SUIT BY SOVEREIGN IMMUNITY.

This Court has repeatedly set forth the standard of review for summary judgment motions:

> The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56 (c). This Court conducts *de novo* review of orders granting or denying summary judgment and looks at all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter and another says the opposite. In addition, the burden of demonstrating that no genuine issues of fact exists is on the moving party. That is the non-movant would be given the benefit of the doubt. (citations omitted).

*Aetna Cas. and Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss.1996)(*citing* *Mantachie Nat. Gas v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss.1992)).

Sovereign immunity has been a source of great debate in Mississippi. This Court abolished the common law doctrine of sovereign immunity in *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss.1982). In *Pruett*, this Court "recognize[d] that the judiciary is no longer the branch of government to supervise and control the extent to which persons with rightful claims against the sovereign may propound those claims." 421 So. 2d at 1051. In *Wells v. Panola County Bd. of Educ*., 645 So. 2d 883, 889 (Miss.1994), this Court characterized *Pruett* as "a mandate to the Legislature to assume full responsibility for the regulation of sovereign immunity; that is, an invitation for 'statutory sovereign immunity'."

The Legislature accepted this invitation and soon "responded by enacting the 'Sovereign Immunity Act of 1984.'" *McKay v. Boyd Const. Co., Inc.*, 571 So. 2d 916 (Miss.1990). This Act was codified as Miss. Code Ann. § 11-46-1 and was reenacted annually such that *Pruett* never came into effect. *Id.* at 920. However, in 1992, this Court in *Presley v. Mississippi State Hwy. Com'n*, 608 So. 2d 1288 (Miss.1992), held that the mandate contained within these successive enactments requiring courts, in deciding sovereign immunity questions, to be governed by case law in effect as it existed immediately prior to our decision in *Pruett*, was unconstitutional and void. In *Robinson v. Stewart*, 655 So. 2d 866 (Miss.1995), this Court held that "*Presley* has no retroactive application."

Subsequent to *Presley*, the Legislature responded by passing a temporary emergency measure, House Bill No. 2, First Extraordinary Session 1992. This statute became immediately effective when signed into law on September 14, 1992 and provided:

> that the state and its political subdivisions such as terms are defined in Section 11-46-1, shall not be liable and shall be immune from suit at law or in equity on account of any wrongful or tortious act or omission, including but not limited to libel, slander, or defamation, by the state or its political subdivisions, or any such act or omission by any employee of the state or its political subdivisions, notwithstanding that any such act or omission constitutes or may be

considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature. . . .

On April 1, 1993, the Legislature once again enacted statutory sovereign immunity with the passage of 1992 Miss. Laws Ch. 491 § 5, now codified as Miss. Code Ann. § 11-46-1. This enactment continues in force today. See Miss. Code Ann. § 11-46-1- § 11-46-23. (Supp.1996). The effect of these enactments is that the State and its political subdivisions continue to be protected from suit under the doctrine of sovereign immunity as it existed prior to this Court's decision in *Pruett*, subject to any statutory waiver of sovereign immunity. *Webb v. County of Lincoln*, 536 So. 2d 1356, 1358 (Miss.1988). Whether sovereign immunity existed for the claims asserted by Aubuchon is determined by the law in effect at the time the claims accrued as well as by the nature of the claims.

Aubuchon's amended complaint alleges first that Aubuchon was wrongfully discharged in breach of both an implied and express employment contract. The United States Supreme Court in *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981), when confronted with the timeliness of an employment discrimination claim, held that the statute of limitations began to run when the employee received notice that a final decision to terminate their employment had been made. See also *Delaware State College v. Ricks*, 449 U.S. 250 (1980). In both *Chardon* and *Ricks*, the Court recognized that the date the employee received notice may at times occur before the last day of employment.

Applying this standard, Aubuchon had clear notice that he could not retire as he wished when he received the September 16, 1992 letter from Jim Ingram informing him that he could not exhaust all of his accumulated leave time prior to his effective date of retirement. Aubuchon later received notice of the **final** decision regarding his retirement/resignation on October 5, 1992 when the Agreed Order was entered into between himself and DPS/MHSP. Thus, House Bill No. 2 signed into law on September 14, 1992 reflects the law in effect at that time and renders MHSP immune from suit.

Aubuchon also raises a cause of action for slander. In *Staheli v. Smith*, 548 So. 2d 1299, 1302 (Miss.1989), this Court held the general rule in Mississippi is that the statute of limitations begins to run from the date of publication of the allegedly libelous statement to a third person. Here, Aubuchon alleges that the false accusations made by the defendants occurred between March 31, 1992 and September 16, 1992. Therefore, the cause of action for slander would necessarily arise during that time period. However, by virtue of the annual Legislative enactments and House Bill No. 2 it appears that DPS/MHSP was cloaked with sovereign immunity from tort claims during this time.

In addition, whether sovereign immunity exists is in part determined by the nature of the claim asserted against the State. Aubuchon's amended complaint, filed on July 6, 1994, sounds in both tort and contract. Aubuchon claims breach of contract, both implied and express, in that the "termination of Aubuchon's employment was contrary to and in violation of the express and implied representations made to Aubuchon and in breach of policies and procedure contained within the employee manual." However, Aubuchon's complaint may be characterized as one for tortious breach of contract as Aubuchon alleges "[f]urthermore, this termination of employment was preceded by conduct so willful and so grossly negligent as to constitute an independent tort."

This Court has held that "[s]overeign immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory." *Trammel v. State*, 622 So. 2d 1257, 1262 (Miss.1993). (citations omitted). *See also Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900

(Miss.1993). Thus, it appears that Aubuchon's claims based on breach of contract are not barred.

However, whether Aubuchon had a viable claim in contract against DPS/MHSP is as a matter of law resolved by *Sloan v. Taylor Machinery Co.*, 501 So. 2d 409 (Miss.1987).

In *Sloan*, this Court held that where there was nothing to show a genuine issue of material fact as to whether or not a written contract was actually entered into at the time of the employment, the presentation of an employee handbook to the employee following his employment, did not make the employment agreement a written contract. *Id.* at 410. Like *Sloan*, there is nothing in the record which suggests that a written contract was ever entered into between Aubuchon and DPS/MHSP. Therefore, the mere presentation of an employee handbook to Aubuchon, without more, is insufficient to constitute a written contract.

Moreover, as for Aubuchon's claims of an implied contract arising from the prior practice of MHSP and the "Buchanan Plan" of allowing employees to exhaust all personal leave prior to the effective date of retirement presents an issue analogous to that in *Mississippi Forestry Com'n v. Piazza*, 513 So. 2d 1242 (Miss.1987). In *Piazza*, this Court distinguished between "a common-sense *practice* of an agency and the *authority* of the agency to vary therefrom in order to meet its needs." 513 So. 2d at 1250. In the case *sub judice*, Aubuchon argues that the prior practice of MHSP resulted in an implied contract between Aubuchon and MHSP in which Aubuchon had an expectation interest. However, the prior practice of MHSP was found to be contrary to the intent of the law and therefore prohibited. In *Piazza*, this Court held "[t]hat for common-sense morale purposes, a particular custom is followed affects not the least the *authority* of an agency to deviate from it." *Id.* Likewise, the prior practice of MHSP does not now affect the authority of that agency to change its procedure in order to comply with the law.

Aubuchon also asserts tort claims for slander and emotional distress. Aubuchon argues that DPS/MHSP waived sovereign immunity by purchasing liability insurance. However, this Court has held that absent an explicit statutory waiver of sovereign immunity, "[t]he mere purchase of liability insurance by a governmental entity does not waive sovereign immunity." *Region VII, Mental Health v. Isaac*, 523 So. 2d 1013, 1015 (Miss.1988)(citations omitted). Here, however, Miss. Code Ann. §11-46-16 (effective September 16, 1992) provides such a waiver, thus there is a positive statutory pronouncement rather than the absence legislative action. That section explicitly provides:

> (2) If any governmental entity has in effect liability insurance to cover wrongful or tortious acts or omissions of such governmental entity or its employees, such governmental entity may be sued by anyone affected to the extent of such insurance carried; however, except as otherwise provided in subsection (3) of this section, immunity from suit is only waived to the extent of such liability insurance carried and a judgment creditor shall have recourse only to the proceeds or right to proceeds of such liability insurance.

However, this section expressly states that:

> (4) The provisions of this section shall be of no force or effect from and after July 1, 1993, as to the state and, from and after October 1, 1993, shall be of no force and effect as to political subdivisions.

Therefore, Aubuchon's claims are barred.

## II. WHETHER THE SUIT WAS BARRED AND WITHOUT MERIT ON THE FOLLOWING ALTERNATIVE BASES.

## A. THE STATE CIVIL SERVICE SYSTEM IS THE EXCLUSIVE REMEDY FOR EMPLOYMENT GRIEVANCES OF STATE EMPLOYEES.

Aubuchon was clearly a state civil service employee. Therefore, Aubuchon, like all other civil service employees, falls within the ambit of Miss. Code Ann. § 25-9-101- § 25-9-305 which establishes the Statewide Personnel System. Grievance procedures for state employees are included in this statutory system. Rather than pursue the statutory remedies, Aubuchon chose to file an original action in circuit court.

In *Mississippi Dept. of Public Safety v. McKnight*, 623 So. 2d 249, 252 (Miss.1993), this Court held that "a state civil-service employee who has been dismissed from employment must exhaust his or her administrative remedies before seeking judicial review." *See also Hood v. Mississippi Department of Wildlife Conservation*, 571 So. 2d 263 (Miss.1990). Moreover, in *Mississippi Forestry Com'n v. Piazza*, 513 So. 2d 1242, 1248 (Miss.1987), this Court expressly stated that the only rights a civil service employee could have under employment with the State, if any, are contained within the act creating the State Personnel Board. . . ." Thus, Aubuchon's appropriate remedy was to proceed through the State Personnel Board and Employee Appeals Board. Miss. Code Ann. § 25-9-131 clearly states that "an employee in state service may appeal his dismissal or other action adversely affecting his employment status to the employee appeals board created herein." This statute further provides that "an employee who is aggrieved by a final decision of the employee appeals board shall be entitled to judicial review thereof in the manner provided by law." The manner of judicial review of EAB decisions is provided for in Miss. Code Ann. § 25-9-132 which states that an appeal may be taken to circuit court from a final decision of the employee appeals board. Employees aggrieved by the action of the circuit court may appeal to this Court in the manner provided by law.

Aubuchon failed to pursue his remedies as mandated by § 25-9-132, but rather chose to file an original action for wrongful discharge in circuit court. This was clearly contrary to prior decisions by this Court and statutory procedure. In *Hood v. Mississippi Dept. of Wildlife Conservation*, 571 So. 2d 263, 268 (Miss.1990), this Court held that "the remedial process provided to [state] employees necessarily vests the employee's department, agency or institution, and ultimately the EAB, with full authority to hear not only the merits vel non of any charge of inefficiency or other good cause, but also any other matter of fact or law the employee may assert affecting his employment." Going further, this Court held that the language contained in Miss. Code Ann. § 25-9-131(3) to the effect that the appeals procedure replaced any existing statutory procedure established that this was the employee's exclusive remedy. *Id.*

Here, the initial matter before the EAB was the three-day suspension imposed upon Aubuchon by the MHSP tribunal. As a result of the EAB approval of this suspension, Aubuchon entered into the Agreed Order on October 5, 1992 wherein he agreed to resign/retire. This was clearly a matter of "dismissal or other action adversely affecting his employment status" and should have been pursued through the statutory procedure. Any rights related to employment are created by statute, not by tort

or contract. The State's argument has merit.

**B. AUBUCHON WAS BARRED FROM SUIT BY THE SETTLEMENT OF HIS EAB GRIEVANCE**.

DPS/MHSP next argue that Aubuchon's claims for wrongful termination and tortious breach of contract are barred because the October 5, 1992 Agreed Order was a valid settlement and compromise between the parties. This Court has long held that those who enter contracts "knowing their conditions, and [are] not misled or deceived by fraudulent representations" are bound thereby. *McCorkle v. Hughes*, 244 So. 2d 386, 388 (Miss.1971) (*quoting Fornea v. Goodyear Yellow Pine Co.*, 181 Miss. 50, 178 So. 914 (1938)).

In the case *sub judice*, Aubuchon entered into the Agreed Order with assistance of counsel and specifically states that MHSP would reinstate the 3-day suspension in return for which Aubuchon agreed to tender his resignation with all calculations of comp time and annual leave being made according the state law. The record reflects that Aubuchon was paid for the three-day suspension imposed by the MHSP and properly received creditable time towards his retirement for his remaining annual leave. Aubuchon fails to specifically identify any fraudulent or misleading representations and thus is bound by the Agreed Order.

DPS/MHSP also argue that Aubuchon's present claims are barred under the doctrines of collateral estoppel and res judicata. This Court has held that the doctrine of collateral estoppel applies to administrative proceedings. *Hood v. Mississippi Dept. of Wildlife Conservation*, 571 So. 2d 263, 268 n.5 (Miss.1990)(*citing Mississippi Employment Sec. Com'n v. Philadelphia Mun. Separate School Dist. of Neshoba County*, 437 So. 2d 388 (Miss.1983). "This doctrine is essentially a subsidiary of the doctrine of res judicata." *Id.* (*citing City of Jackson v. Holliday*, 246 Miss. 412, 419, 149 So. 2d 525 (1963). In *Hood*, this Court held "absent a statute to the contrary, a chancery court is precluded by either doctrine once an administrative agency, acting in a fact-finding capacity, enters its ruling." In *Hood*, this Court found that where every claim Hood asserted in his subsequent action in chancery court was available to him before the EAB, and before the Circuit Court thereafter, the subsequent action was barred under the elementary notions of res judicata. In *Marcum v. Mississippi Valley Gas Co., Inc.*, 672 So. 2d 730 (Miss.1996) this Court reiterated the requirements for res judicata and collateral estoppel:

> Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. . . .

> When collateral estoppel is applicable, the parties will be precluded from relitigating a specific issue actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action. And collateral estoppel, unlike the broader doctrine of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated.

(*quoting Dunaway v. W.H. Hopper and Associates, Inc.*, 422 So. 2d 749 (Miss.1982)).

Here, because no record accompanied the Agreed Order to reflect the issues actually litigated before and determined by the EAB, collateral estoppel is not applicable. However, the "broader doctrine of res judicata" will apply.

The first requirement of res judicata is identity of the subject matter of the action. The subject matter before the EAB relating to the three-day suspension, the events leading to that suspension as well as the subsequent resignation by Aubuchon is identical to that asserted by Aubuchon in the instant action.

The second requirement of res judicata requires identity of the cause of action. Here, Aubuchon's subsequent action is for wrongful discharge, breach of contract, slander, and emotional distress; all of which arose out of his employment with the MHSP.

The third factor requires there to be identity of the parties to the cause of action. The parties before the EAB proceedings were DPS/MHSP. However, in the subsequent suit in circuit court, additional defendants, yet both employees of DPS/MHSP are named. The last and final factor required by res judicata is the identity of the quality or character of a person against whom the claim is made. The amended complaint names DPS/MHSP, Captain Johnny E. Kerr, and Master Sergeant Joe Eddie McFerrin as defendants, however, Aubuchon specifically alleges that all actions complained of were committed "within the course and scope of employment" with MHSP. Although additional individual defendants are named in the subsequent action, all actions complained of were derivative of Kerr and McFerrin's supervisory positions with DPS/MHSP.

Clearly, Aubuchon could have presented every ground for relief he asserts in the present action. As in *Hood, supra,* Aubuchon's claims are barred under "elementary notions of res judicata." 571 So. 2d at 268. Again, the State's argument is meritorious.

### C. WHETHER AUBUCHON WAS BARRED FROM SUIT BY THE ONE-YEAR STATUTE OF LIMITATIONS.

In *Sloan v. Taylor Machinery Co.,* 501 So. 2d 409 (Miss.1987), this Court held that the limitations period contained in Miss. Code Ann. § 15-1-29 applied where the only evidence of an employment contract was an employee handbook. Sloan is factually analogous to the case *sub judice*. In *Sloan*, the employee was given an handbook after his employment began. Sloan argued that the handbook was the basis of the written agreement and that he was terminated from his job without cause and in direct violation of the employee/employer contract. *Id.* at 410. *Sloan*, like the case *sub judice*, was before this Court on appeal from a motion for summary judgment.

In the case *sub judice*, Aubuchon, in his affidavit in opposition to the motion for summary judgment, states that he received a handbook while at the Mississippi Highway Safety Patrol Academy. Aubuchon's specific basis for his contractual rights are contained in General Order Number 07-01 which states as follows:

I. PURPOSE-this General Order establishes the policy governing contracts between employees and the Department of Public Safety.

II. POLICY-It is the policy of this department that no employee or any member of his

immediate family shall enter into nor have any interest in, directly or indirectly, any contract with the state or this department other than the **regularly assigned duties ofsuch employees**, except as may be provided by law. (emphasis by Aubuchon)

Here, Aubchon's claims essentially sound in contract. If so construed, then by virtue of this Court's opinion in *Sloan*, Aubuchon's claims are subject to the one-year limitations period of § 15-1-29. Here, as in *Sloan*, Aubuchon's affidavit does not state that a written agreement was made at the time of Aubuchon's employment and moreover there is no issue of material fact as to whether or not a written contract was actually entered into. Furthermore, Aubuchon is not named in the instrument.

In *Sloan*, this Court held that "where a person is not named in the written contract and parol evidence is necessary to show the existence of the contractual relationship, the contract is unwritten insofar as that person is concerned and the limitations statute relating to written contracts is not applicable." 501 So. 2d at 410 (citations omitted). Going further, this Court held that "where oral proof of other matters is necessary to make the written instrument an agreement, the shorter statute of limitations must apply." *Id.* at 411. (citations omitted). Miss. Code Ann. § 15-1-29 expressly states that "an action on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after." Because Aubuchon's action is one based upon an alleged unwritten contract of employment, it should have been commenced within one year after the cause of action accrued.

Here, there is no actual termination date because Aubuchon agreed to retire. Thus, it is necessary to determine when Aubuchon's cause of action accrued. Here, the breach of the alleged contract could have occurred on one of several dates. The disciplinary proceedings instituted against Aubuchon occurred in January 1992 through March 1992. On September 16, 1992, Aubuchon was notified that he could not exhaust months of personal leave prior to his retirement while still receiving a full salary and on October 5, 1992, Aubuchon entered into the Agreed Order wherein Aubuchon agreed to retire. On October 6, 1992, Aubuchon notified the MHSP of his plan to retire and on October 31, 1992 Aubuchon did in fact retire. Even if the latest of these dates is utilized to trigger the statute of limitations, Aubuchon's complaint, filed on December 7, 1993, is time barred under § 15-1-29.

The United States Supreme Court when confronted with issues involving wrongful termination held that the statute begins to run when the employee received notice that a final decision to terminate their employment had been made. *Chardon v. Fernandez*, 454 U.S. 6,8 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 258-260 (1980). Applying this standard to the case at bar results in a time-barred action. Without further evidence in the record, one may at least conclude that Aubuchon had notice that his employment would end when he entered into the Agreed Order on October 5, 1992. Therefore, the December 7, 1993 filing date for the wrongful termination claim was simply too late.

Having resolved the timeliness of the contract claims asserted by Aubuchon, issues remain surrounding the "tort" aspects of Aubuchon's action. Following the first summary judgment motion by DPS/MHSP, Aubuchon amended his complaint to include allegations that the "termination was preceded by conduct so willful and so grossly negligent as to constitute an independent tort." Aubuchon relies on *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086 (Miss.1987) for the argument that this Court recognized that wrongful discharge actions sound in both tort and contract. Aubuchon

misconstrues *Perry*. In *Perry*, this Court discussed different views on wrongful discharge and stated that:

> Wrongful discharge actions, not founded on some sort theory of contract, essentially sound in tort, although some of the theories have attributes associated with both contract and tort. Of these hybrids, the most prominent, (though as yet a small minority view), is the theory of the implied covenant of good faith and fair dealing. Any breach of this implied covenant by malicious termination or harassment is said to give the victim a tort action for wrongful discharge.

Although this Court recognized that Perry's brief basically reflected this view, we did not adopt such a rule. Here, as in *Perry*, Aubuchon's brief and amended complaint allege the tort of wrongful termination. However, because this Court declined to adopt the minority view that such actions do give rise to a tort claim, Aubuchon's claims remain in contract and are controlled by Miss. Code Ann. § 15-1-29.

In addition to the wrongful termination claim, Aubuchon raises a claim for slander. Specifically, Aubuchon alleges that "false accusations made by the defendants. . . tended to injure . . . Aubuchon's reputation, lessen his public esteem and lower him the (sic) confidence of the community." DPS/MHSP argue that Miss. Code Ann. § 15-1-35 controls and therefore Aubuchon's claims are untimely. Specifically, DPS/MHSP argue that this statute applies to alleged false charges regarding the termination of employment and to similar intentional torts.

Miss. Code Ann. § 15-1-35 requires that "[a]ll actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after."

This statute clearly applies to an action for slander and therefore Aubuchon's claim must have been commenced within one year after the claim accrued. Here, Aubuchon filed his original complaint on December 7, 1993. The cause of action for slander stems from false accusations made during the March 31, 1992 tribunal hearings until September 16, 1992 when Aubuchon agreed to retire from DPS/MHSP.

This Court has repeatedly held that actions for slander are controlled by the one-year statute of limitations contained in § 15-1-35. *City of Mound Bayou v. Johnson*, 562 So. 2d 1212 (Miss.1990); *Baugh v. Baugh*, 512 So. 2d 1283 (Miss.1987). Therefore, the latest date to commence the cause of action for slander was on September 16, 1993. Obviously by commencing his case on December 7, 1993, Aubuchon's slander claim is time-barred.

The last and final cause of action raised by Aubuchon is for emotional distress. In his complaint, Aubuchon fails to specify whether he alleges a cause of action for intentional or negligent infliction of emotional distress. If Aubuchon's claim is one of intentional infliction of emotional distress, the one-year statute of limitations contained in Miss. Code Ann. § 15-1-35 applies. *King v. Otasco*, *Inc.*, 861 F.2d 438, 442 (5th Cir. 1988). If so, Aubuchon's claim is time-barred. However, if Aubuchon's cause of action is one of negligent infliction of emotional distress, the six-year statute of limitations contained in § 15-1-49 applies and the action is not time-barred. *Id.*

Important to this analysis is that within the same paragraph of the complaint in which Aubuchon alleges "emotional distress" he demands actual and punitive damages. In addition, Aubuchon alleges that the actions of the defendants were "wanton and malicious." The inclusion of the demand for punitive damages and the characterization of the defendants' conduct weigh heavily in favor characterizing Aubuchon's claim as one for intentional infliction of emotional distress as punitive damages are usually allowed only in those instances where gross negligence or willful misconduct exists. *Bryant v. Alpha Entertainment Corp.*, 508 So. 2d 1094, 1098 (Miss.1987); *Jesco, Inc. v. Shannon*, 451 So. 2d 694, 704 (Miss.1984). As a result, Aubuchon asserted a claim for intentional emotional distress and is thus time-barred under the provisions of Miss. Code Ann. § 15-1-35.

### D. WHETHER, AS A MATTER OF LAW, AUBUCHON COULD NOT EXHAUST ALL ACCUMULATED PERSONAL LEAVE PRIOR TO RETIREMENT.

The use of personal leave for state civil service employees is governed by Miss. Code Ann. § 25-3-93. In pertinent part, § 25-3-93 (4) states:

> Upon termination of employment each employee shall be paid for not more than thirty (30) days of accumulated personal leave. Unused personal leave in excess of thirty (30) days shall be counted as creditable service for the purposes of the retirement system as provided in Sections 25-11-103 and 25-13-5.

Statutes also provide a method of computation for determining "creditable service" for retirement purposes. See Miss. Code Ann. § 25-11-103.

Mississippi law is clear: the maximum amount of personal leave that an employee will be paid for following termination is thirty (30) days. Here, DPS Commissioner Jim Ingram, acting upon the direction of the State Auditor's Office and an Attorney General's Opinion, informed Aubuchon that he could not exhaust his personal leave while continuing to receive a full salary prior to his effective date of retirement.

Aubuchon now alleges that the prior practice of the "Buchanan Plan" by the MHSP gave rise to a contractual right allowing MHSP employees to exhaust personal leave while drawing full salary. Further, Aubuchon claims that the "Buchanan Plan" was altered or selectively enforced to prevent him from retiring in this manner.

As stated earlier, this Court has clarified the distinction between *practice* and *authority*. In *Mississippi Forestry Com'n v. Piazza*, 513 So. 2d 1242, 1250 (Miss.1987), this Court held "[t]hat for common-sense morale purposes, a particular custom is followed affects not the least the *authority* of an agency to deviate from it." Moreover, this Court held "[w]hile a departure from custom may indicate a personal animus of a superior against a subordinate, this in and of itself creates no right where none existed." *Id.* The mere fact that the MHSP followed the "Buchanan Plan" up to and until Aubuchon's planned retirement creates no contractual right to have that plan/practice continue.

### III. WHETHER DEFENDANTS KERR AND MCFERRIN WERE IMMUNE FROM SUIT FOR DECISIONS WITHIN THE COURSE AND SCOPE OF EMPLOYMENT.

In *Womble v. Singing River Hosp*., 618 So. 2d 1252, 1261 (Miss.1993) this Court held that suing

public officials in their official capacities is tantamount to suing the State or its affiliated entities themselves, and any immunities protecting such State entities will likewise shield the public officials affiliated with them when they are sued in the their official capacities." (*quoting Winters v. Lumley*, 557 So. 2d 1175, 1177 (Miss.1989)). Because Kerr and McFerrin are "officers or agents of the State of Mississippi, our law clothes them with defenses not available to private citizens." *McFadden v. State*, 542 So. 2d 871 (Miss.1989).

This Court has repeatedly discussed the principles and reasons behind common law qualified immunity. For example, in *Womble*, *supra*, this Court held that "[c]ommon law qualified immunity has traditionally sought to protect the discretion of public officials so that those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good." (citations omitted).

"When such an individual is named as a defendant in a civil action our law directs that they enjoy qualified public official immunity." *Barrett v. Miller*, 599 So. 2d 559, 567 (Miss.1992). However, an official has

> no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.

*Id.* (citations omitted). In *T. M. v. Noblitt*, 650 So. 2d 1340 (Miss.1995), this Court held:

> The immunity of a public official is a limited, not an absolute immunity. Since the purpose of the immunity is to protect the official in his decision-making role, we have held the immunity will not apply unless the action involves a discretionary decision-making process. Phrased otherwise, if the opinion is merely ministerial, there is no immunity.

*Id.* (*quoting Davis v. Little*, 362 So. 2d 642 (Miss.1978)). This Court has distinguished between discretionary functions which are immunized and those which are ministerial and therefore unprotected. In *Poyner v. Gilmore*, 171 Miss. 859, 158 So. 922 (1935) this Court held that "[w]hile there is no flexible rule to distinguish whether an act is ministerial or discretionary, the most important criteria is if the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial."

The initial issue therefore is whether the alleged acts of Kerr and McFerrin were ministerial or discretionary. Aubuchon specifically alleges that he was "subjected to false allegations as to his competency and job performance." Aubuchon argues that these false allegations by the defendants took place during the investigation of a citizen complaint filed against Aubuchon as well as during the disciplinary proceedings before the MHSP tribunal and the EAB. Aubuchon further alleges that "each and every action of Defendant's agents, employees, or representatives was conducted while in the course and scope of their employment."

The activity complained of by Aubuchon occurred during personnel proceedings before the MHSP tribunal and the EAB. In *Mississippi Forestry Com'n v. Piazza*, 513 So. 2d 1242 (Miss.1987), this Court held that "[c]ommensurate with their statutory authority and obligations it is the function of agency heads to determine its affairs and operations, including personnel matters. Personnel evaluation is clearly discretionary as it necessarily involves the officer's judgment and discretion.

The facts of this case are closely analogous to those before this Court in *Staheli v.Smith*, 548 So. 2d 1299 (Miss.1989) where Staheli alleged that a college dean made "inappropriate" comments during tenure evaluation proceedings. This Court held that the commentary required of faculty members during tenure proceedings was purely discretionary as the standard for evaluation was "entirely subjective." In *Staheli*, this Court held that "[u]nder Mississippi defamation law, libel is not necessarily an intentional tort." *Id.* at 1305. "A defamation claim requires that the plaintiff prove, among other things, 'fault amounting to at least negligence on the part of the publisher'." *Id. (quoting Blake v. Gannett Co., Inc.*, 529 So. 2d 595, 602 (Miss.1988).

In *Staheli*, this Court held that the relevant areas of inquiry were whether there was any evidence in the record that the defendant intentionally stated a falsehood when making comments and recommendations or; whether the defendant greatly exceeded his authority. Here, as in *Staheli*, there is no evidence in the record that Kerr or McFerrin "intentionally stated a falsehood" either before the MHSP tribunal or before the EAB or that either defendant exceeded their authority. Aubuchon provides this Court with no evidence of alleged statements made during either proceeding or by whom they were made. Moreover, the record of the proceedings before the EAB are not included in the record for this Court's evaluation.

DPS/MHSP also argue that Kerr and McKerrin are, as a matter of law, protected by statutory immunity for any actions arising during the course and scope of their employment. First, DPS/MHSP argue that Kerr and McFerrin are protected under Miss. Code Ann. § 11-46-7(2). However, this provision expressly states that "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." DPS/MHSP also argue that claims brought by Aubuchon fall within the circumstances which are exempted from liability pursuant to Miss. Code Ann. § 11-46-9. Miss. Code Ann. § 11-46-9 (1) provides that a government entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim which falls within one of the enumerated situations. Specifically applicable is § 11-46-9 (1)(a) which exempts those acts arising our of a legislative or judicial action or inaction, or **administrative action** or inaction of a legislative or **judicial nature**. (emphasis added).

Personnel disciplinary matters and the administrative hearings and proceedings which follow are clearly "administrative action of a judicial nature."

Also applicable to the case at bar is § 11-46-9 (1)(d) which exempts from liability those claims arising from the exercise or failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused. As discussed above, Kerr and McFerrin were engaged in discretionary duties as opposed to ministerial and thus are also protected by statutory immunity. In addition to the qualified immunity privilege which exists

because Kerr and McFerrin are state officials, there remains a qualified privilege in the employment context. In ***Hooks v. McCall***, 272 So. 2d 925, 927 (Miss. 1973) this Court held that "a qualified privilege exists between those directly interested in the same matter and in the absence of malice no cause of action lies." Moreover, once the qualified privilege is established, "statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those person who have a legitimate and direct interest in the subject matter." ***Benson v. Hall***, 339 So. 2d 570 (Miss.1976) (*citing* ***Killebrew v. Jackson City Lines***, 225 Miss. 84, 82 So. 2d 648 (1955)).

Once again, the record contains no evidence of malice or bad faith nor does it reflect whether or not the statements made by Kerr and McFerrin were communicated to those without a legitimate interest in the subject matter. However, the MHSP tribunal of Aubuchon's peers as well as the EAB would clearly have a legitimate interest in pending personnel matters and allegations related thereto.

Kerr and McFerrin were protected by both common law and statutory immunity as well as the qualified privilege existing for employment matters. As such, summary judgment could have clearly been rendered in favor of these two individuals.

## CONCLUSION

The claims asserted by Aubuchon are barred by the doctrine of sovereign immunity; the applicable statute of limitations; and the failure to exhaust administrative remedies. In addition, Aubuchon's claims are barred on several other bases asserted by DPS/MHSP therefore, the trial court erred in denying summary judgment.

**REVERSED AND RENDERED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN AND BANKS, JJ., CONCUR. LEE, C.J., AND McRAE, J., CONCUR IN RESULT ONLY. ROBERTS AND MILLS, JJ., NOT PARTICIPATING.**


1. Although the Agreed Order recites that Aubuchon resigned in exchange for the reinstatement of the suspension, it appears that this suspension was "rescinded" rather than "reinstated" as Aubuchon was paid for this time "in compliance with the Agreed Order."