623 So.2d 249 (1993)
MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY
v.
Homer L. McKNIGHT.
No. 90-CC-1291.
Supreme Court of Mississippi.
July 1, 1993.
As Modified on Denial of Rehearing September 23, 1993.
*250 Michael C. Moore, Atty. Gen., Dalton McBee, Jr., and Charles S. Head, James W. Younger, Jr., Jackson, for appellant.
John Booth Farese, Farese Farese & Farese, Ashland, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
This case involves the dismissal of Sgt. Homer L. McKnight from the Mississippi Highway Safety Patrol. The Mississippi Department of Public Safety ("DPS") dismissed McKnight for committing various violations of state-agency regulations. McKnight appealed his dismissal, and a hearing officer for the Mississippi Employee Appeals Board ("MEAB") affirmed. McKnight appealed the hearing officer's affirmance to the Harrison County Circuit Court. DPS challenged McKnight's appeal and contended that the circuit court lacked jurisdiction since McKnight had failed to exhaust his administrative remedies. Specifically, DPS contended that McKnight should have appealed the hearing officer's decision to the full, three-member MEAB before seeking judicial review (assuming the MEAB affirmed the officer's decision). Judge Jerry O. Terry rejected DPS's contention and concluded that DPS waived its right to raise the lack-of-jurisdiction defense. Judge Terry also ordered that McKnight be reinstated and a less-severe form of punishment be imposed.
DPS appealed. This Court reverses the Circuit Court's order and reinstates the MEAB hearing officer's order upholding McKnight's dismissal by DPS.

A. Facts
Three incidents led to McKnight's dismissal: (1) the "Spanish Class" incident; (2) the "Sturgeon/Miller" incident; and (3) the "Halfacre" incident. All incidents occurred while McKnight, who was from Long Beach in Harrison County, was off-duty, out of uniform, and in Jackson attending the Mississippi Law Enforcement Training Academy.

1. "Spanish Class" Incident
From November 28 through December 9, 1988, McKnight attended a Spanish-language class at the Training Academy. One night, after one of these classes, McKnight drove his patrol car to a coin-operated, self-help laundromat. He drank alcoholic beverages while he washed and dried his clothes, and he got drunk. Eventually, he left the laundromat and drove his patrol car to a Texaco service station in Pearl. The service-station attendant testified that McKnight was too drunk to find or make his way back to the Academy. The attendant had to help McKnight walk into the service station and make a telephone call to the Academy. Two fellow patrolmen, who were also attending the Academy, drove to the station to pick McKnight up and escort him home. The patrolmen testified that they would not let him drive in view of his inebriated condition.

2. The "Sturgeon/Miller" Incident
On the evening of April 17, 1989, McKnight and a fellow patrolman, Keith Lott, had been drinking and cruising in McKnight's patrol car. Around midnight, the two patrolmen cruised out to the Ross Barnett Reservoir where they stopped a car occupied by two young adults, Starla Sturgeon and Jimmy Miller. Sturgeon and Miller were returning home after mailing Miller's income-tax return at the Main Post Office in downtown Jackson.
Lott asked Sturgeon what she and Miller were doing and asked to see her driver's license. Sturgeon got out of the car and noticed that the patrolmen were out of uniform *251 and drinking vodka. When Sturgeon told Miller about the vodka, Lott grabbed her by the arm and put her in the patrol car. Officer Lott then "grabbed Miller's shirt at the bottom and threw it up to his neck and threw him against Sturgeon's car." Upon witnessing the patrolmen's attack on Miller, Sturgeon attempted to get out of the patrol car; the patrolmen, however, forced her back into the car. McKnight and Lott then got into their patrol car and started to drive off. What the patrolmen were planning to do with Sturgeon is unknown.
At that point, Sturgeon "became hysterical and started crying." Sturgeon's hysteria prompted the patrolmen to return her to her car where Miller presumably waited. The patrolmen then lectured them about the evils of drugs, and they drove off.
Sturgeon immediately reported the incident to the Rankin County Sheriff's Department.

3. The "Halfacre" Incident
On the same night of the "Sturgeon/Miller" incident  around 2:00 a.m.  McKnight and Lott stopped Elizabeth Boyd Halfacre near the Ross Barnett Reservoir. According to Halfacre, McKnight stuck his head in her window and, slurring his words, asked her: "You are so  you are so beautiful, what are you doing?" Halfacre testified that she knew McKnight was drunk and that she was "really, really scared." Thinking fast, Halfacre told McKnight that her husband was in the car in front of hers and that she had to get home. She drove off and reported this incident to the Mississippi Highway Patrol Internal Affairs Office when she read about the "Sturgeon/Miller" incident in the newspaper.

4. The Dismissal
As noted, these three incidents led DPS to dismiss McKnight for violating agency regulations which condemn: (1) the "use of alcohol ... while off duty where such is directly or indirectly related to job performance, duties, obligations and/or contrary to the employee's oath of office"; (2) "threatening or coercing [of] private citizens"; and (3) "acts of conduct occurring on or off the job which are plainly related to job performance."
McKnight appealed the dismissal to the MEAB which appointed a hearing officer to the case. The hearing officer affirmed after concluding that the unlawful harassment and intimidation of private citizens by two drunken law-enforcement officers wholly justified DPS's decision to dismiss McKnight:
... The initial following of the Sturgeon automobile by McKnight and Lott was bad enough, but the flashing of lights which caused Miss Sturgeon to pull over to the side of the road constituted an illegal stop. Lott and McKnight were inside a marked patrol car, and thus clothed under the color of being officers of the Mississippi State Highway Safety Patrol. This warrantless stop, without any hint of probable cause, is absolutely illegal and is civilly actionable. The questioning of the parties which went on for a considerable length of time is also repugnant to the laws and Constitution of this State and the United States. The forcible manhandling of Miss Sturgeon and placing her in the rear of the patrol car is dangerously nearly violative of the kidnapping statutes. Such intimidating tactics obviously created a great amount of fear and apprehension in the minds and hearts of the victims....
McKnight appealed the hearing officer's affirmance to the Harrison County Circuit Court on the primary basis that his actions were not so egregious as to warrant his dismissal.
DPS filed an answer and a motion to dismiss. In both its answer and motion, DPS contended that McKnight should have filed his appeal with the full MEAB and that his failure to do so meant that the circuit court lacked jurisdiction to entertain his appeal.
Judge Terry issued an order on July 17, 1990, denying DPS's motion, reversing the hearing officer's affirmance, vacating DPS's dismissal of McKnight, and remanding the case to the Mississippi Highway Safety Patrol Commissioner for imposition of a less-severe form of punishment. DPS filed a motion for reconsideration of the July 17, 1990 order. While this motion was pending, on November 15, 1990, Judge Terry, in an order entered ex parte, held that DPS has *252 "waived any objection to this Court's jurisdiction" and entered an order remanding the case to the full MEAB for hearing. The order recited further that after the hearing, the parties would have an opportunity for review.

B. Issues
DPS appealed and presented three issues for this Court's analysis. For brevity's sake, these issues will be consolidated accordingly:
WHETHER MCKNIGHT FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AND, AS A RESULT, THE CIRCUIT COURT LACKED JURISDICTION?

II. ANALYSIS

A. Applicable Law
This Court has repeatedly and unequivocally declared that a state civil-service employee who has been dismissed from employment must exhaust his or her administrative remedies before seeking judicial review. Hood v. Mississippi Dep't of Wildlife Conservation, 571 So.2d 263, 268 (Miss. 1990) (citing cases). Statutory and regulatory provisions delineate the aggrieved employee's administrative remedies:
10(a) When an appeal [of a dismissal] is filed, the [MEAB] shall assign a Hearing Officer and set a date, time and place for the hearing.
... .
18. After all evidence is heard or received and the hearing is completed, the presiding Hearing Officer shall, within a reasonable time thereafter, prepare and file a written decision and order therefrom....
... .
22(a) Any party aggrieved by the final written decision and order of a presiding Hearing Officer entered on the hearing of an appeal may file a written Request for Review by Full [MEAB].

(b) The request must be filed within ten (10) days after the date the final order is filed.
... .
(f) The full [MEAB] shall issue a final written decision and order on the review within a reasonable time after the final date for filing all documents to be considered on review.
23. Any party aggrieved by a final written decision and order of the [full MEAB] may appeal such order [to the appropriate court] in the manner provided by applicable laws and statutes.
See generally Miss.Employee Appeals Bd.Admin.R. 10, 18, 22 & 23; see also Miss. Code Ann. §§ 25-9-131 to -132 (Supp. 1992).
Of critical import, applicable law dictates that "No aggrieved party may file a petition for judicial review ... until a final written decision and order on a full [MEAB] review has been filed." See Miss.Employee Appeals Bd.Admin.R. 3(b).

B. Application of Law
Neither party disputes that all statutory and regulatory laws have been followed in this case  with one exception. This exception concerns the issue of whether McKnight should have filed an appeal with the full MEAB  rather than with the circuit court  after the hearing officer issued his written decision and order. This Court resolves this issue in the affirmative. McKnight's failure to exhaust his administrative remedies left the circuit court without jurisdiction. The November 15, 1990, order is both factually and legally erroneous. There is no requirement known to this Court that a question of jurisdiction be raised within thirty days. Moreover, the DPS contested jurisdiction in its response to the petition for appeal which was filed within thirty days.
This case need not be remanded to the MEAB for review of the hearing officer's decision and order since McKnight failed to timely file his appeal. To recap, the hearing officer filed his decision and order on November 10, 1989. Pursuant to MEAB Rules 22(a) and (b): "Any party aggrieved by the final written decision and order of a presiding Hearing Officer ... may file a written Request for Review by Full [MEAB] ... within ten (10) days after the date the final order is filed." McKnight, however, did not file his appeal until December 12, 1989  which is over a month after the hearing *253 officer issued his written decision and order. The hearing officer's decision and order is therefore final.

III. CONCLUSION
Based on the foregoing, this Court reverses the circuit court orders and reinstates the hearing officer's decision and order to dismiss Homer McKnight as employee of DPS.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
ROBERTS, J., not participating.