# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-SA-00112-COA

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY AND ALBERT SANTA CRUZ, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY**

**APPELLANTS**

**v.**

**STACY SMITH, GREG NESTER, AND KRISTOPHER WINGERT**

**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/2016 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL BY: PETER W. CLEVELAND WILSON DOUGLAS MINOR |
| ATTORNEYS FOR APPELLEES: | DENNIS L. HORN SHIRLEY PAYNE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | GRANTED THE APPELLEES' MOTION FOR SUMMARY JUDGMENT AND OTHER RELIEF |
| DISPOSITION: | AFFIRMED - 08/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1.    Forensic scientists Stacy Smith, Greg Nester, and Kristopher Wingert (collectively, the Appellees), after proceeding through four levels of administrative review for grievances related to their transfer from the Mississippi Crime Laboratory (Crime Lab) to the

Mississippi Bureau of Investigation (MBI) and the subsequent loss of their Crime Lab "position identification numbers" (PINs), filed a petition for a writ of mandamus on July 9, 2013, in the Hinds County Circuit Court, First Judicial District. The Mississippi Department of Public Safety (MDPS) failed to notify the Appellees, who were state civil-service employees, about the loss of their Crime Lab PINs until well after the event occurred. In their mandamus petition, the Appellees requested the following relief:

> (1) placement in the forensic[-]scientist step appropriate with their experience and performance, (2) all back pay due along with all fringe benefits, including contributions to the Mississippi State Retirement System [(PERS)], (3) on[-]call pay, (4) prospective placement in steps earned by experience, and (5) placement in supervisory positions if such become available.

¶2. The trial court initially ruled on the Appellees' petition in a May 5, 2015 remand order. The trial court found that the Appellees failed to exhaust their administrative remedies when they neglected to appeal to the Employee Appeals Board (EAB) following the fourth level of administrative review. As a result, the trial court found it lacked subject-matter jurisdiction to consider the Appellees' grievances. The trial court therefore remanded the case to the EAB for consideration of the remaining questions of fact.

¶3. On remand, the EAB treated the matter as a "grievable" matter, and in its June 26, 2015 order, the EAB dismissed the Appellees' grievances for lack of jurisdiction. The EAB cited *Mississippi Department of Public Safety v. McKnight*, 623 So. 2d 249 (Miss. 1993), for the principle that the Appellees' failure to exhaust their administrative remedies before pursuing judicial review in the trial court deprived the EAB of jurisdiction.

¶4. The Appellees appealed the EAB's dismissal of their mandamus petition to the trial

2

court and subsequently moved for summary judgment. In their summary-judgment motion, the Appellees relied on *Mississippi Employment Security Commission v. Culbertson*, 832 So. 2d 519 (Miss. 2002), for their position that the trial court possessed jurisdiction because the failure to exhaust their administrative remedies was based on "substantial evidence" that MDPS failed to follow the Mississippi State Personnel Board's (MSPB) rules regarding "intra-agency transfer."

¶5.     On January 7, 2016, the trial court granted the Appellees' motion for summary judgment. In its summary-judgment order, the trial court ordered MDPS to take the following actions:

> (1) . . . reinstate [the Appellees' MDPS] Crime Lab PINs with the appropriate job description; (2) place [the Appellees] in the forensic[-]scientist step appropriate with their experience and performance; (3) pay [the Appellees] all back pay due along with fringe benefits, including contributions to PERS and on[-]call pay; and (4) give [the Appellees] prospective placements and steps earned by experience.

Aggrieved by the trial court's judgment granting the Appellees summary judgment and their other requested relief, MDPS timely appeals.

¶6.     On appeal, MDPS raises the following issues: (1) whether the trial court lacked subject-matter jurisdiction to consider the Appellees' grievances and to grant them relief when they failed to exhaust their administrative remedies; (2) whether the trial court erred in finding the exhaustion requirement inapplicable because the Appellees' position reclassifications were "nongrievable" under MSPB rules; (3) whether the EAB properly dismissed the Appellees' grievances on remand for lack of jurisdiction because they failed to exhaust their administrative remedies before seeking judicial review; and (4) whether the

3

trial court's grant of summary judgment to the Appellees exceeded the court's authority.

¶7.     Upon review, we affirm the trial court's judgment granting the Appellees summary judgment and their other requested relief.

**FACTS**

¶8.     On December 1, 2005, the MDPS assistant commissioner informed the Appellees, who were at all relevant times permanent state civil-service employees, that they would be transferred from the Crime Lab to MBI but that they would retain their positions, salaries, and PINs.  The Appellees allege that their transfer violated MSPB's rules on intra-agency transfer because MDPS failed to request or receive MSPB approval for the transfer.

¶9.     In 2008, without their knowledge, the Appellees lost their Crime Lab PINs when MDPS assigned them MDPS PINs.[1]  In January 2011, after the discovery of the prior loss of their Crime Lab PINs, the Appellees each requested that the MBI director laterally transfer them back to their Crime Lab PINs.  However, in his January 24, 2011 replies to the Appellees, the MBI director stated that a transfer back to the Crime Lab would be impossible because the Crime Lab director had provided that no Crime Lab PINs were currently available.  The MBI director also indicated that the Appellees' "job qualifications" for the newly assigned MDPS PINs were still awaiting approval from MSPB.  On appeal, the Appellees allege that MSPB has not recognized "job descriptions" for their newly assigned MDPS PINs.  They further assert that these newly assigned MDPS PINs, which lack job

---

[1] In its remand order, the trial court stated it was unknown whether the Appellees initially knew they lost their Crime Lab PINs.  The parties appear to agree, however, that the loss of the Crime Lab PINs and the assignment of the MDPS PINs occurred without notice to the Appellees.

4

descriptions, deprive them of "career paths" for advancement.

¶10. In February 2011, the Appellees each filed grievances with MBI, claiming that the loss of their Crime Lab PINs limited their opportunities for promotions and pay increases and that other forensic scientists were allowed to retain their Crime Lab PINs and corresponding career paths. The Appellees sought transfers back to the Crime Lab, reassignment of their original state civil-service employee Crime Lab PINs, and advancements they allegedly would be owed had they retained their original Crime Lab PINs and career paths. Alternatively, the Appellees sought the following: placement on the same career paths they had begun when hired by the Crime Lab with their original PINs; advancements they allegedly would be owed had they retained their original career paths; and back pay from the dates on which they allegedly became eligible for those advancements.

¶11. All the Appellees' grievances were denied at the initial three levels of administrative review, with each level stating it lacked the authority to grant the Appellees' requested relief. At the fourth level of administrative review, known as the "agency decision," all the Appellees' grievances were denied because the reviewing authority for MDPS determined that no Crime Lab PINs were available.

¶12. After proceeding through the four levels of administrative review, and after being informed that the agency lacked the authority to grant them relief, the Appellees filed a petition for a writ of mandamus in the trial court and asked the court to order MDPS to provide their requested relief. The trial court found it lacked subject-matter jurisdiction to consider the Appellees' grievances because the Appellees did not exhaust their administrative

remedies by appealing to the EAB following the fourth level of administrative review. The trial court therefore remanded the mandamus petition to the EAB.

¶13.    On remand, the EAB dismissed the Appellees' grievances for lack of jurisdiction. The EAB held that the Appellees' failure to exhaust their administrative remedies before pursuing judicial review deprived the EAB of jurisdiction. The Appellees appealed the EAB's dismissal of their mandamus petition to the trial court and subsequently moved for summary judgment.

¶14.    The trial court found the Appellees did not exhaust their administrative remedies because of "substantial evidence" that MDPS failed to follow MSPB's rules regarding "intra-agency transfer." The trial court therefore determined that it possessed jurisdiction, and it granted summary judgment to the Appellees. Aggrieved by the trial court's grant of summary judgment and other requested relief to the Appellees, MDPS appeals. As set forth below, we find the matters raised by the Appellees' petition do not constitute grievable matters and that no other remedy was reasonably available to the Appellees. Thus, the trial court possessed jurisdiction, and we affirm the trial court's grant of summary judgment in favor of the Appellees.

## STANDARD OF REVIEW

¶15.    The issuance of a writ of mandamus rests in the sound discretion of the court, subject to well-settled principles. *Overstreet v. Lord*, 160 Miss. 444, 450, 134 So. 169, 170 (1931). Thus, we review the trial court's decision to grant or deny relief requested by a writ of mandamus for abuse of discretion. *See Barbour v. State ex rel. Hood*, 974 So. 2d 232, 238

6

(¶10) (Miss. 2008). The Mississippi Supreme Court has recognized that our courts possess the power to hear claims that public officials have violated their mandatory, nondiscretionary duties of office. *See Fordice v. Thomas*, 649 So. 2d 835, 840 (Miss. 1995) (superseded by statute on other grounds); *Poyner v. Gilmore*, 171 Miss. 859, 864, 158 So. 922, 923 (1935). In *Poyner*, the court stated:

> While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, [t]he most important criterion, perhaps, is that . . . the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion[.]

*Poyner*, 171 Miss. at 864, 158 So. at 923 (internal quotation marks omitted).

### DISCUSSION

¶16.    The record reflects that the issue at bar constitutes a nongrievable matter affecting the employment of state civil-service employees. However, in denying the Appellees' requested relief, the record demonstrates that the EAB applied the review procedures applicable to grievable state-personnel/employment matters. Furthermore, we acknowledge that this matter initially came before the trial court as a writ of mandamus to compel MDPS to perform its official duty relative to the Appellees, who were at all times permanent state civil-service employees. As discussed, the Appellees requested that MDPS (1) reassign their original Crime Lab PINs and job descriptions, and (2) provide the compensation owed to them due to the wrongful transfer to MBI and the subsequent loss of their original Crime Lab PINs. Instead of ruling on the writ on mandamus, the trial court remanded the matter to the

7

EAB. The EAB then asserted a lack of jurisdiction and dismissed the case. Upon the Appellees' appeal of the EAB's dismissal, the trial court granted their requested relief, finding that the Appellees' failure to exhaust their administrative remedies was inapplicable and that the court possessed jurisdiction.

¶17. "Subject[-]matter jurisdiction is a threshold inquiry which must be determined before a court may proceed to the merits." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 821 (¶13) (Miss. 2009) (citing *Luckett v. Miss. Wood Inc.*, 481 So. 2d 288, 290 (Miss. 1985)). Jurisdiction constitutes a question of law that we review de novo. *Tyson Breeders Inc. v. Harrison*, 940 So. 2d 230, 232 (¶5) (Miss. 2006) (citing *Burnette v. Hartford Underwriters Ins.*, 770 So. 2d 948, 950 (¶4) (Miss. 2000)).

¶18. In accordance with Mississippi Code Annotated section 9-1-19 (Rev. 2014), the trial court possessed subject-matter jurisdiction to hear and determine the Appellees' petition for a writ of mandamus and their requested relief. Jurisprudence establishes that writs of mandamus can be issued by a circuit court to a public official to require performance of the public official's public duty.[2] "A mandamus is the appropriate remedy to compel public functionaries, or tribunals, to perform some duty required by law, where the party has no other remedy[,]" and the right or duty sought is certain. *Bd. of Police of Attala Cty. v. Grant*, 17 Miss. 77, 90 (1847); *see also Winsor v. Hunt*, 243 P. 407, 408-13 (Ariz. 1926) (discussing the Legislature's appropriation of a writ of mandamus against a state officer to compel the

---

[2] *See State ex rel. Patterson v. Bd. of Supervisors of Prentiss Cty.*, 234 Miss. 26, 40, 108 So. 2d 223, 223-24 (1959); *State ex rel. Patterson v. Bd. of Supervisors of Prentiss Cty.*, 234 Miss. 26, 39, 105 So. 2d 154, 160 (1958).

issuance of warrants to pay compensation).

¶19.    The record reflects that the matters in the present case constitute nongrievable matters, and therefore, the EAB's administrative-review procedures failed to apply.[3]  The Appellees' writ of mandamus sought to compel public functionaries to perform duties required by law, and the Appellees possessed no other remedy.  Additionally, the record reflects that, even if the administrative-remedy procedure and related exhaustion requirement had applied, MDPS failed to provide the Appellees prior notice of the termination of their PINs and the transfer to a new demotional PIN, as was required by MSPB rules.[4]  The Appellees at all relevant times were permanent state civil-service employees, and as such, Mississippi Administrative Code section 27-110:5.5.6 provides that they were entitled to ten days' prior written notice of intent to effect any demotion and "an opportunity for a conference with the appointing authority or designated representative and to respond in writing prior to any such action."[5] MDPS failed to follow the procedures, including prior notice, required to accomplish an intra- or inter-agency demotional transfer as set forth in Mississippi Administrative Code

---

[3] *See* Miss. Admin. Code § 27-110:10.3 (establishing that nongrievable matters include organizational structure; including the number of employees or positions in an organizational unit, transfers, demotions, revision of the compensation plan, and position classifications).

[4] *See* Miss. Admin. Code §§ 27-110:6.3.6 (discussing agency reorganization); 27-110:5.5.6 (discussing demotional transfers and the applicable procedural right to prior notice; the right to respond in writing; and the right to a conference with the appointing authority); 27:110:6.3.8 (discussing the abolishment of positions).

[5] *See* Miss. Admin. Code §§ 27-110:5.5.6 to :5.5.8 (discussing the required documentation to support demotional intra- or inter-agency transfers).

9

section 27-110:5.5.6 and Mississippi Code Annotated section 25-9-127(1) (Rev. 2010).[6]

MDPS also failed to accomplish the procedures required to reclassify a permanent state civil-service employee in a way that adversely affects his or her compensation or employment. *See* Miss. Code Ann. § 25-9-127(1).

¶20.   For grievable matters, a notice of appeal must be filed "within fifteen days after the date a person receives written notice of the final decision of an alleged grievable action or within fifteen days of the first attempted delivery date by certified mail, return receipt requested, whichever occurs first."  Miss. Admin. Code § 27-110:10.7.  MDPS, though, prevented the Appellees from pursuing such administrative-review procedures by failing to notify the Appellees for approximately two years that the adverse employment actions had already occurred unbeknownst to the Appellees.  Furthermore, the issues at hand constitute nongrievable matters under MSPB regulations and applicable statutes, and the EAB's administrative-review procedures are inapplicable.  *See* Miss. Admin. Code § 27-110:10.3. The Appellees were therefore not required to exhaust their administrative remedies.

¶21.   As stated, although the matters were nongrievable, the trial court nevertheless remanded the case to the EAB after finding the Appellees failed to exhaust their

---

[6] Section 25-9-127(1) states:

> No employee of any department, agency[,] or institution who is included under this chapter or hereafter included under its authority, and who is subject to the rules and regulations prescribed by the state[-]personnel system, may be dismissed or otherwise adversely affected as to compensation or employment status except for inefficiency or other good cause, and after written notice and hearing within the department, agency[,] or institution as shall be specified in the rules and regulations of [MSPB] complying with due process of law[.]

administrative remedies. By remanding, the trial court provided the EAB the apparatus to correct MDPS's failure to follow the MSPB procedures required for terminating, demoting, or transferring a permanent state civil-service employee and for approving a new job description.[7] The EAB, however, dismissed the matter, finding it lacked jurisdiction because the Appellees sought judicial review prior to exhausting their administrative remedies. The EAB failed to acknowledge that the case constituted a nongrievable matter to which the exhaustion requirement did not apply. Moreover, as the record reflects, the Appellees filed a writ of mandamus and not an appeal of a grievable matter.

¶22. In reviewing the relief requested by the Appellees' mandamus petition, we acknowledge that section 25-9-135(3) places an affirmative duty upon the state personnel director to correct violations of MSPB statutory provisions. Moreover, Mississippi Code Annotated section 25-9-133(2) (Rev. 2010) provides that "[n]o person shall be employed by any agency for any period for any purpose except in an employment position authorized by legislative appropriation or by the body authorized by law to escalate budgets and approve employment positions." Section 25-9-133(2) further provides that "[e]ach employment position so authorized shall be classified and assigned a pay range on the basis of actual job content, according to the State Classification Plan." In violation of applicable statutory and regulatory requirements, MDPS transferred the Appellees to demotional PINs without prior notice and without any approved job description. The record also reflects that for almost two years MDPS delayed notifying the Appellees of the termination of their state civil-service

---

[7] *See* Miss. Code Ann. § 25-9-135(3) (Rev. 2010) (providing that the state personnel director possesses an affirmative duty to correct violations of MSPB statutory provisions).

11

employee PINs and of their prior demotional transfer to a new PIN with no MSPB-approved job description. Thus, the Appellees possessed no reasonable remedy other than a writ of mandamus.[8]

¶23. As acknowledged, the following employment actions constitute "nongrievable" actions under Mississippi's agency-grievance procedures:

A. [I]ssues which are pending or have been concluded by direct appeal through administrative or judicial procedures;

. . . .

C. [B]udget and organizational structure, including the number or assignment of employees or positions in any organizational unit;

. . . .

E. [T]he selection of an individual by the appointing authority, department head, or designee to fill a position through promotion, transfer, demotion, or appointment unless it is alleged that selection is in violation of a written agency policy or of a MSPB rule on filling vacancies;

. . . .

H. [A]ny matter which is not within the jurisdiction or control of the appointing authority;

. . . .

K. [E]stablishment and revision of the compensation plan, and the policies, procedures, rules[,] and regulations pertaining thereto;

---

[8] The writ of mandamus is an ancient, extraordinary writ designed to compel the defendant to act or perform a legal duty. *See* Miss. Code Ann. § 11-41-1 (Rev. 2012); *Doss v. State*, 324 So. 2d 253, 254 (Miss. 1975); *Swann v. Buck*, 40 Miss. 268, 288-89 (1866); *see also* Annotation, *Mandamus to Compel Payment of Salary of Public Officer or Employee*, 5 A.L.R. 572 (1920).

12

L.      [P]osition classifications; and

M.      [E]mployee benefits.

Miss. Admin. Code § 27-110:10.3.

¶24.    In the present case, and as set forth within this opinion, no adequate and speedy remedy at law was available to the Appellees, and the matter fell outside the EAB's administrative-review procedures.[9]   The matters the Appellees asserted constitute nongrievable matters, and the Appellees seek to have MDPS perform its legal duty to provide them the permanent state civil-service compensation due to them in accordance with their originally assigned state civil-service PINs.  Since this case involves nongrievable matters and asserts a clear right where no other remedy is available, the writ of mandamus constitutes an appropriate remedy and falls within the trial court's jurisdiction to issue.  *See* Miss. Code Ann. § 9-1-19.

¶25.    Mississippi Administrative Code section 27-110:10.3(K) sets forth that "establishment and revision of the compensation plan, and the policies, procedures, rules[,] and regulations pertaining thereto[,]" constitute nongrievable issues.   Additionally, Mississippi Administrative Code section 27-110:10.3(L) provides that "position classifications" constitute nongrievable issues.  As stated, MDPS failed to notify the Appellees of the reclassification and elimination of their Crime Lab PINs in 2008 when MDPS accomplished the employment actions that adversely affected the Appellees' compensation.  Therefore, the

---

[9] *State ex rel. Chatham v. Bd. of Supervisors of Yalobusha Cty.*, 209 Miss. 79, 84, 46 So. 2d 73, 74 (1950) ("[M]andamus may issue where there is not a plain, adequate, and speedy remedy in the ordinary course of law.").

Appellees were not required to exhaust their administrative remedies since the issues at bar constitute nongrievable matters. Moreover, the employment actions MDPS took fail to comply with the requirements to validly accomplish such actions for permanent state civil-service employees like the Appellees. As a result, the elimination of the Appellees' Crime Lab PINs and their demotional transfers, or demotional reclassifications, to another PIN constitute unauthorized actions in contravention of statutory law and MSPB regulations.[10]

¶26. The Appellees' requested relief clearly seeks reinstatement of the original state-service Crime Lab PINs they held before MDPS's unauthorized personnel actions, which resulted in the loss of the PINs, and the compensation owed to them as a result of the unauthorized loss of their Crime Lab PINs. The record reflects that MDPS possessed an affirmative duty to pay the Appellees in accordance with their Crime Lab PINs until and unless MDPS followed the proper procedures set forth to implement a reclassification, transfer, or other adverse action. Thus, the law and the evidence in the record support the trial court's finding that MDPS possesses a duty to pay the Appellees in accordance with the permanent state civil-service employee Crime Lab PINs they held prior to the unauthorized adverse employment actions. Therefore, we find no abuse of discretion in the trial court's

---

[10] *See and compare Miss. State Bd. of Educ. v. Noble*, 388 So. 2d 488, 490 (Miss. 1980) (voiding the commencement of a lawsuit by a county board of education where the decision to commence the lawsuit occurred at a special meeting for which the notice did not list the decision as a matter of business and where statute permitted only listed matters of business to be decided at special board meetings), *with Ace Pipe Cleaning Inc. v. Hemphill Constr. Co.*, 134 So. 3d 799, 805 (¶25) (Miss. Ct. App. 2014) (voiding a subcontract formed without obtaining the certificate of responsibility required by statute).

grant of relief in this case.[11] Based upon the foregoing, we affirm the trial court's judgment granting the Appellees summary judgment and their other requested relief.

¶27. **AFFIRMED.**

**IRVING, P.J., ISHEE, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., GRIFFIS, P.J., AND FAIR, J. BARNES, J., NOT PARTICIPATING.**

**WILSON, J., DISSENTING:**

¶28. State-service employees Stacy Smith, Greg Nester, and Kristopher Wingert ("appellees") allege that their employer, the Mississippi Department of Public Safety (MDPS), has taken certain actions regarding their position identification numbers (PINs) that have prevented them from obtaining promotions and raises. In 2011, the appellees filed grievances with MDPS, which MDPS denied. For reasons that the record does not explain, the appellees abandoned their grievances and did not pursue their statutory right of appeal to the Mississippi Employee Appeals Board (EAB). They took no action for over two years and then filed a lawsuit against MDPS in circuit court. The circuit court eventually granted the appellees the same relief they had sought in their previously abandoned grievances, and the majority affirms. I respectfully dissent because state law provides that an appeal to the EAB, followed by judicial review in circuit court, is the exclusive remedy for grievances related to state employment. Because the appellees failed to exhaust available administrative remedies, the circuit court was bound to dismiss the case for lack of jurisdiction.

---

[11] The issuance of a writ of mandamus rests in the sound discretion of the court, subject to well-settled principles. *Overstreet*, 160 Miss. at 444, 134 So. at 170; *see also Barbour*, 974 So. 2d at 238 (¶10) (applying an abuse-of-discretion standard of review).

15

## FACTS AND PROCEDURAL HISTORY

¶29.    Few facts can be discerned from the sparse and somewhat confusing record in this appeal.  The appellees are forensic scientists or crime scene analysts with the Mississippi Bureau of Investigation (MBI), a division of MDPS.  Prior to December 1, 2005, the appellees' PINs were under the Mississippi Crime Laboratory ("Crime Lab"), another division of MDPS.  On December 1, 2005, the appellees were informed that they were being transferred from the Crime Lab to MBI but that their positions, salaries, and PINs would "all remain the same."  Some further personnel action was taken with respect to the appellees' status in 2008, although what exactly occurred is not clear.  An order entered in a prior circuit court action states that in 2008 the appellees "lost their Crime Lab PINs and were assigned Public Safety [(i.e., MDPS)] Pins."  The appellees allege that other similarly situated employees retained their "Crime Lab PINs" and have since received raises and promotions that have been denied to the appellees solely because they now have "Public Safety PINs" rather than "Crime Lab PINs."  It appears that the appellees may not have become aware of the change to their PINs until 2011.

¶30.    The appellees all filed grievances with MDPS in 2011. They pursued their grievances through the agency's multi-step grievance process to a final agency decision from the Commissioner of MDPS.  The final agency decision stated: "There are no Crime Lab positions or 'PINs' available [at] this time, therefore your request must be denied."  By obtaining a final agency decision, the appellees exhausted all applicable agency-level grievance procedures, and the agency's final decision was then appealable to the EAB.  *See*

16

*generally* Mississippi State Personnel Board (MSPB) Policy and Procedures Manual (hereinafter, "MSPB Manual") § 10.7.[12]  However, for reasons not explained in the record, the appellees never appealed to the EAB, and the record discloses no further action taken by the appellees from February 2011 to July 2013.[13]

¶31.    In July 2013, the appellees filed a petition for a writ of mandamus in circuit court that sought the same relief as the grievances that they had filed (but then abandoned) more than two years earlier.  In a May 2015 "Remand Order," the circuit court noted that "the parties ha[d] engaged in discovery, including depositions," and the appellees had filed a motion for summary judgment; however, the record in the present appeal includes little of the record in the 2013 mandamus action.  In the May 2015 Remand Order, the circuit court "remanded" the case to the EAB for "factual determinations" and an "appropriate" "remedy."[14]

_____

[12] Relevant sections of the MSPB Manual can be found in title 27, part 110, chapter 10 of the Mississippi Administrative Code.

[13] The majority asserts that "MDPS . . . prevented the Appellees from pursuing [an appeal to the EAB] by failing to notify the Appellees for approximately two years that the adverse employment actions had already occurred." *Ante* at (¶20).  This is incorrect.  The time for filing an appeal to the EAB runs from the employee's receipt of a final agency decision denying his grievance.  MSPB Manual § 10.7.5B.  The appellees received final agency decisions in response to the grievances they filed in 2011.  Nothing prevented them from then appealing to the EAB.  Nor did MDPS ever contend that their 2011 grievances were untimely. *See* MSPB Manual § 10.5.1A ("An employee who has a grievable complaint may submit . . . the grievance . . . to his immediate supervisor . . . within seven (7) working days *of becoming aware of the cause of the complaint*." (emphasis added)).

[14] Although the circuit court's "Remand Order" purported to "remand" the case to the EAB, the case *could not have been* "remanded" to the EAB because the case had never been before the EAB to begin with.  As noted above, the appellees abandoned their grievances without ever appealing to the EAB and two-plus years later filed original actions in circuit court. *See, e.g.*, *Stearn v. LaSalle*, No. 07-cv-02059, 2008 WL 525425, at *1 (D. Colo. Feb. 26, 2008) ("The term 'remand' means, literally, to send the case back to the court from

17

¶32. On "remand" from the circuit court, the EAB ruled that it lacked jurisdiction. The EAB reasoned that it has jurisdiction to hear appeals by state-service employees from adverse employment actions once agency-level grievance procedures have been exhausted, and the appellees had not filed an appeal to the EAB after exhausting agency-level procedures.

¶33. The appellees then returned to circuit court via a notice of appeal. In the circuit court, MDPS argued, as it had in the prior mandamus action, that the case should be dismissed for lack of jurisdiction because the appellees abandoned their grievances in 2011 and, therefore, never exhausted their administrative remedies. The circuit court disagreed and granted the appellees' motion for summary judgment. The court accepted the appellees' argument that exhaustion of remedies would have been "futile" because their claims are "nongrievable" under MSPB rules. The court further held that the appellees' transfer or reclassification in 2005 and/or 2008 violated MSPB regulations. As a remedy, the court ordered MDPS to "reinstate" appellees' "Crime Lab PINs" and to grant them raises, promotions, and back pay.

**ANALYSIS**

¶34. Our Supreme Court has held that "for state law purposes the statutory method of administrative appeal and judicial review provided by the state civil service statute is the exclusive remedy for grievances related to state employment." *Wright v. White*, 693 So. 2d 898, 902 (Miss. 1997), *overruled on other grounds by E. Miss. State Hosp. v. Callens*, 892

---

whence it came. Because this case was commenced in federal court, there is no court to which it could be remanded."); *Petrofsky v. ARA Grp. Inc.*, 878 F. Supp. 85, 86 (S.D. Tex. 1995) ("*Remand* means to send back . . . . A case cannot be remanded to a court from which it did not come, regardless of how just or expedient that result might be.").

So. 2d 800 (Miss. 2004).[15] Nonetheless, the majority holds that the circuit court had original subject matter jurisdiction to rule on this grievance filed by state-service employees against the state agency that employs them. The majority's analysis—which permits the appellees to circumvent the exclusive jurisdiction of the EAB—seems to depend on the premise that "[t]he record reflects that the issue at bar constitutes a nongrievable matter affecting the employment of state civil service employees." *Ante* at (¶16). However, whether the issue is nongrievable is in dispute and must be presented to and decided by the EAB in the first instance. The appellees cannot skip the administrative appeal process and proceed directly to circuit court based on *their own assertion* that the dispute is nongrievable. Moreover, even if the dispute is ultimately determined to be nongrievable, that still does not authorize an independent action in circuit court. For these reasons, I respectfully dissent.

¶35.     First, the question whether the dispute is nongrievable is not a foregone conclusion and must be determined by the EAB in the first instance. As MDPS points out, the EAB has broad jurisdiction over many issues related to state-service employment. As just one example, the "application of personnel policies, procedures, rules, regulations and statutes" is a "grievable" issue under the state-service grievance procedure. MSPB Manual § 10.2B. If, as the majority contends, "the employment actions MDPS took" violated "statutory law and MSPB regulations" (*ante* at (¶25)), then there is reason to believe that the EAB would consider the dispute to be grievable.

---

[15] *Callens* overruled *Wright* only to the "limited extent" that it "could be interpreted as a denial" of an employee's "right to assert appropriate § 1983 claims against state officials in their personal or individual capacities." *Callens*, 892 So. 2d at 822 (¶55).

¶36. The appellees contend, and the circuit court ruled, that the dispute is nongrievable because "position classifications" are deemed nongrievable under MSPB regulations. MSPB Manual § 10.3L.[16] However, it is unclear that the EAB would agree with this argument *as it was never presented to the EAB*—this is simply an assertion made by the appellees, which the circuit court and the majority have accepted.[17] This is critical because the EAB's "construction of its own rules and regulations and the statutes under which [it] operate[s]" is entitled to "[g]reat deference." *Miss. Dep't of Human Servs. v. McDonald*, 24 So. 3d 378, 380 (¶7) (Miss. Ct. App. 2009) (quoting *Miss. Dep't of Transp. v. Rutland*, 965 So. 2d 696, 701-02 (¶9) (Miss. Ct. App. 2007)). The EAB's interpretation of its own rules—including its rules specifying which issues are grievable—is binding unless it "rises to the level of being an arbitrary determination." *McDonald*, 24 So. 3d at 380 (¶7). The appellees were required to present their claims to the EAB so that the EAB could construe its own rules and determine whether the dispute was grievable. If the EAB deemed the dispute nongrievable, the appellees could then *appeal* to circuit court. However, the appellees were not entitled to proceed directly to court based on their own *assumptions* as to how the EAB would rule. *See*

---

[16] The majority cites additional provisions of the MSPB regulations that supposedly render the dispute nongrievable; however, the circuit court and the appellees have relied exclusively on the provision pertaining to "position classifications." In any event, as explained in the text that follows, whether any of these provisions apply in this case is an issue that must be decided by the EAB in the first instance.

[17] On "remand" from the circuit court, the EAB did not dismiss the matter as "nongrievable" (or even address the question whether the dispute was grievable). The EAB properly dismissed the matter for lack of jurisdiction because the EAB's jurisdiction is over appeals from final agency decisions following the exhaustion of all agency-level grievance procedures, not actions filed in circuit court.

*Miss. Forestry Comm'n v. Piazza*, 513 So. 2d 1242, 1249 (Miss. 1987).

¶37.   Indeed, in *Piazza*, the Supreme Court held that the employee was required to present his grievance to the EAB prior to filing suit in court even though the EAB hearing officer had already notified the employee that his appeal did not "appear[]" to present a grievable issue. *See id.* at 1244, 1249.   The Supreme Court held that "[t]here was not way for the [EAB] to determine whether [the employee] had some possible grievance under the State Personnel Board Act or a regulation promulgated thereunder *without some kind of hearing*" and presentation of evidence.   *Id.* at 1249 (emphasis added).   The Court held that the employee was required to obtain a ruling from the EAB—including a ruling on the threshold question whether the dispute was grievable—before he could seek permanent relief in court.   *Id.*   The issue in this case is the same; the appellees were required to exhaust their administrative remedies prior to filing suit in circuit court.

¶38.   The majority's conclusion that the appellees were entitled to proceed directly to circuit court because the matter is "nongrievable" is flawed for another reason: if the matter truly is nongrievable then the appellees simply have no claim under state law.   As noted above, agency-level grievance procedures followed by statutory appeals to the EAB and circuit court are the "exclusive remedy for grievances related to state employment."   *Wright*, 693 So. 2d at 902.   If an issue is nongrievable under EAB rules, that does not entitle the employee to file an independent action in circuit court to enforce alleged rights or protections under state law. Rather, it means that the issue does not give rise to legally enforceable rights or a claim under state law.   *Phillips v. Miss. Veterans' Home Purchase Bd.*, 674 So. 2d 1240, 1242 (Miss.

21

1996); *Moody v. Miss. Dep't of Pub. Safety/Highway Patrol*, 729 So. 2d 1249, 1251-52 (¶¶5-8) (Miss. 1999).

¶39.    When, as in this case, a state-service employee fails to exhaust his administrative remedies, including appeals to the EAB, the circuit court lacks jurisdiction to consider—and must dismiss—claims alleging violations of state-service employment laws and regulations. *See Miss. Dep't of Pub. Safety v. McKnight*, 623 So. 2d 249, 252 (Miss. 1993).   This case illustrates some of the good reasons for requiring exhaustion of administrative remedies.   For example, the appellees assert that their claims are nongrievable, but that issue has never been presented to the EAB, the issue turns on the proper interpretation of various EAB rules, and the EAB's interpretation of its own rules is entitled to great deference.   The appellees also assert that actions taken with respect to their employment status violate state law and MSPB regulations.   But, again, they have never presented those issues to the EAB, which is the entity authorized by law to interpret and apply the relevant laws and regulations.   Citing a series of laws and regulations—including some provisions that neither the circuit court nor the parties have ever mentioned—the majority asserts with confidence that the appellees' claims are nongrievable and that MDPS violated the appellees' procedural and substantive rights. *See ante* at (¶¶19-26).   However, the record is inadequate to determine any of these issues.   The limited record on appeal includes no testimony and only a few relevant documents.   For the most part, the record consists of allegations and argument.[18]

¶40.    These issues all serve to illustrate why the law requires state-service employees to

_____

[18] The appellees' brief asserts that MDPS "did not contest" their "Itemization of Fact Not Genuinely Disputed."   However, no such document is in the record.

22

exhaust administrative remedies before bringing their grievances to court. Had the appellees availed themselves of the "exclusive remedy" for their claims—agency-level grievance procedures followed by an appeal to the EAB and, if necessary, the circuit court—we would have the benefit of an administrative record and the EAB's interpretation of relevant laws and rules, which would be binding on this Court unless deemed arbitrary. *McDonald*, 24 So. 3d at 380 (¶7). Because the appellees circumvented the appropriate, statutory method for pursuing these claims, we are instead presented with an inadequate record and no relevant administrative rulings or interpretations.

¶41.    The circuit court ruled that the appellees were not obligated to exhaust administrative remedies because their claims are nongrievable and, as such, exhaustion would have been "futile." Although not using the term "futile," the majority seems to agree. However, as discussed above, it is unclear whether the dispute is grievable, and the EAB is the entity authorized to interpret its own rules and to make an initial determination of whether the dispute is grievable. The appellees cannot circumvent the EAB based on their own unsubstantiated assertions as to how the EAB would have ruled. In addition, the majority cites several cases discussing courts' power to issue writs of mandamus.[19] Tellingly, however, the majority cites no cases holding that it is proper for a court to issue a writ of mandamus ordering a state agency to grant back pay, raises, and promotions to the agency's

---

[19] The majority proceeds as if the issue on appeal is the propriety of the issuance of a writ of mandamus, stating that "we review a trial court's decision to grant or deny . . . a writ of mandamus for abuse of discretion" and concluding that a writ of mandamus was "an appropriate remedy" in this case. *See ante* at (¶¶15-26). Arguably, that is what the circuit court did in substance. However, the circuit court's final order did not purport to grant a writ of mandamus, and on appeal neither side has argued the issue in those terms.

employees. Such issues must be addressed through grievances, appeals to the EAB, and judicial review—not mandamus petitions.

¶42. The majority's citation to a litany of MSPB rules and precedents on the "ancient" and "extraordinary" writ of mandamus obscures that the issue in this appeal is neither novel nor complex. The issue is simply whether a state-service employee may abandon mandatory grievance procedures and file a lawsuit in circuit court, seeking the exact same relief, just because he prefers to be in circuit court. The law is clear that the procedures established by state personnel laws and regulations—including exhaustion of agency-level grievance procedures, an appeal to the EAB, and judicial review in circuit court—are the exclusive remedy for grievances related to state-service employment. I respectfully dissent.

**LEE, C.J., GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.**